Kenneth B. Wilson (SBN 130009)
COASTSIDE LEGAL
455 1st Avenue
Half Moon Bay, California 94019
Telephone: (650) 440-4211
   ken@coastsidelegal.com

Joshua M. Masur (SBN 203510)
ZUBER LAWLER & DEL DUCA LLP
2000 Broadway Street, Suite 154
Redwood City, California 94063
Telephone: (650) 434-8538
Facsimile:  (213) 596-5621
   jmasur@zuberlaw.com

Attorneys for Defendant
REDBUBBLE INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LTTB LLC, a California limited liability company,<br><br>              Plaintiff,<br><br>      v.<br><br>REDBUBBLE INC.,<br><br>              Defendant. | Case No. 3:18-cv-00509-RS<br><br>**DEFENDANT REDBUBBLE INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[Filed concurrently with Declarations]**<br><br>Judge:    Hon. Richard Seeborg<br>Date:     June 13, 2019<br>Time:     1:30 p.m.<br>Crtrm.:   3 |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT ........................................................................................................2

  A.   Redbubble Has Not Engaged in Conduct that Could Subject It to Liability
       for Trademark Infringement. ........................................................................2

    1.   Redbubble Cannot Be Liable for Direct Trademark Infringement. ...............2

      a)   Redbubble Does Not Sell, Offer for Sale, or Distribute
           Allegedly Infringing Goods. ............................................2

      b)   Redbubble Did Not Advertise Infringing Products. ...........................6

      c)   Redbubble's Removal of Allegedly Infringing Listings
           Cannot, as a Matter of Law, Create Liability. ...................................9

    2.   Redbubble Cannot Be Liable for Contributory Trademark
         Infringement ..........................................................................................10

    3.   Redbubble Cannot Be Liable for Trademark Counterfeiting. .....................13

      a)   There Is No Evidence that Redbubble Allowed Sales of
           Allegedly Infringing Products with Knowledge Thereof. ...............13

      b)   No "Stitch for Stitch" Copies of LTTB's Products Were Sold
           on the Redbubble Marketplace. ..........................................14

  B.   The Statute of Limitations Bars the Vast Majority of LTTB's Claims. ...................15

  C.   LTTB Cannot Show That Any of the Accused Listings Violate Its
       Trademark Rights Because the Allegedly Infringing Uses Are All
       Ornamental, Not Source Identifying. ..........................................16

  D.   LTTB Cannot Recover Damages on Its Claims. ..........................................18

    1.   LTTB Cannot Recover Redbubble's Profits or Statutory Damages
         Because There Is No Evidence of Willful Infringement. ...........................18

    2.   LTTB Cannot Recover Actual Damages Because It Has No
         Admissible Evidence. ..........................................................................21

III.  CONCLUSION ...................................................................................................24

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>CASES</u>

*1-800 Contacts, Inc. v. Lens.com, Inc.*,
    722 F.3d 1229 (10th Cir. 2013)...............................................................10, 11, 12

*Academy of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*,
    No. CV 10-03738 AB (CWX), 2015 WL 5311085 (C.D. Cal. Sept. 10, 2015)................11

*Align Tech., Inc. v. Strauss Diamond Insts., Inc.*,
    No. 18-CV-06663-TSH, 2019 WL 1586776 (N.D. Cal. Apr. 12, 2019) ...............14, 15, 18

*Born to Rock Design Inc. v. CafePress.com, Inc.*,
    No. 10 Civ. 8588(CM), 2012 WL 3954518 (S.D.N.Y. Sept. 7, 2012) ................................6

*Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*,
    142 F.3d 1266 (Fed. Cir. 1998).........................................................................13

*Evergreen Safety Council v. RSA Network, Inc.*,
    697 F.3d 1221 (9th Cir. 2012).............................................................................19

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*,
    925 F. Supp. 2d 1067 (C.D. Cal. 2012)..............................................................17, 18

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) ............................................................................................20

*GMA Accessories, Inc. v. BOP, LLC*,
    765 F. Supp. 2d 457 (S.D.N.Y. 2011) ...................................................................4

*Google Inc. v. Rockstar Consortium U.S. LP*,
    No. C 13-5933 CW, 2014 WL 1571807 (N.D. Cal., Apr. 17, 2014) ................................13

*Greg Young Publishing v. Zazzle, Inc.*,
    No. 2:16-CV-04587-SVW-KS, 2017 WL 5004719 (C.D. Cal. Oct. 27, 2017) .................19

*H-D U.S.A., LLC v. SunFrog, LLC*,
    311 F. Supp. 3d 1000 (E.D. Wisc. 2018) ...............................................................6

*Hendrickson v. Amazon.com, Inc.*,
    298 F. Supp. 2d 914 (C.D. Cal. 2003)....................................................................4

*International Olympic Comm. v. San Francisco Arts & Athletics*,
    781 F.2d 733 (9th Cir. 1986)................................................................................19

*International Order of Job's Daughters v. Lindeburg & Co.*,
    633 F.2d 910 (9th Cir. 1980)..............................................................................17

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*,
    456 U.S. 844 (1982) ........................................................................................ 10

*Jarrow Formulas, Inc. v. Nutrition Now Inc.*,
    304 F.3d 829 (9th Cir. 2002) ......................................................................... 15

*Ketab Corp. v. Mesriani Law Group*,
    2015 WL 2084469 (C.D. Cal. May 5, 2015) ................................................. 14

*Lindy Pen Co. v. Bic Pen Corp.*,
    982 F.2d 1400 (9th Cir. 1993) ............................................................ 21, 23, 24

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
    194 F.3d 980 (9th Cir. 1999) ............................................................ 10, 11, 12

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
    658 F.3d 936 (9th Cir. 2011) ......................................................................... 14

*Marketquest Group, Inc. v. BIC Corporation*,
    316 F. Supp. 3d 1234 (S.D. Cal. 2018) ........................................................... 5

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
    No. 2:13-cv-01932-RSM, 2015 WL 4394673 (W.D. Wash. July 16, 2015), *aff'd*
    693 F. App'x 879 (Fed. Cir. 2017) ............................................................. 3, 4

*Ohio State Univ. v. Redbubble, Inc.*,
    369 F. Supp. 3d 840 (S.D. Ohio 2019) ................................................. passim

*Ohio State Univ. v. Skreened Ltd.*,
    16 F. Supp. 3d 905 (S.D. Ohio 2014) ....................................................... 6, 12

*SAS v. Sawabeh Info. Servs. Co.*,
    No. CV1104147, 2015 WL 12763541 (C.D. Cal., June 22, 2015) ................... 20

*Spy Phone Labs LLC v. Google Inc.*,
    No. 15-cv-03756-KAW, 2016 WL 6025469 (N.D. Cal., Oct. 14, 2016) ..... 11, 12

*State of Idaho Potato Commission v. G&T Terminal Pack, Inc.*,
    425 F.3d 708 (9th Cir. 2005) ................................................................... 14, 15

*Stratton Oakmont, Inc. v. Prodigy Services Co.*,
    23 Media L. Rep. 1794 (N.Y. Sup. Ct. 1995) ................................................. 9

*Tiffany (NJ) Inc. v. eBay Inc.*,
    600 F. 3d 93 (2nd Cir. 2010) ....................................................................passim

*VHT, Inc. v. Zillow Group, Inc.*,
    918 F.3d 723 (9th Cir. 2019) ......................................................................... 19

**<u>STATUTES</u>**

15 U.S.C. § 1114 ..................................................................................................... 3

15 U.S.C. § 1117 ................................................................................................... 23

Communications Decency Act of 1996, 47 U.S.C. § 230 .................................... 9

Digital Millennium Copyright Act of 1998, 17 U.S.C. § 512 ............................. 9

**<u>RULES</u>**

Civ. L.R. 7-3 ........................................................................................... 8, 9, 21, 22

Fed. R. Civ. P. 26(a)(2) ............................................................................... 8, 21

Fed. R. Civ. P. 34 ..................................................................................... 22

Fed. R. Evid. 407 .............................................................................................. 9

**<u>TREATISES</u>**

2 J. THOMAS MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 30:27 (2d ed. 1984) ......... 23

4 J. THOMAS MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 31.33 (4th ed. 2001) ........ 15

DEFENDANT REDBUBBLE INC.'S REPLY AND OPPOSITION ON MOTIONS FOR SUMMARY JUDGMENT

# I.    INTRODUCTION

Plaintiff LTTB LLC's Opposition to Redbubble's Motion for Summary Judgment and its own Cross-Motion for Summary Judgment make two things perfectly clear: first, there are no disputed issues of material fact relating to LTTB's claims; and second, as one district court has already held on similar facts, Redbubble has not engaged in any conduct that might subject it to liability for direct or contributory trademark infringement, let alone trademark counterfeiting.

Although LTTB repeatedly argues that there is more that Redbubble could have done to prevent third-party infringement, there is no legal precedent for the requirements that LTTB would impose on Redbubble.  To the contrary, the undisputed evidence demonstrates as a matter of law that not only has Redbubble met its legal obligations, but it has engaged in proactive policing activities that exceed its legal obligations with respect to LTTB's alleged trademark.

LTTB also has failed to adequately rebut the other arguments made by Redbubble in its moving papers.  LTTB repeatedly accuses Redbubble of willfulness, without ever connecting Redbubble's actual conduct to the relevant legal standards.  LTTB has not disputed that the statute of limitation bars its claims for all but one sale that has occurred on the Redbubble Marketplace.  LTTB ignores that use of a phrase – trademarked or not – as decoration, rather than to identify its source, is an ornamental use that its trademark rights cannot reach.  And LTTB presents no admissible evidence whatsoever that it is entitled to any damages, statutory or actual.

Boiled down to basics, the undisputed evidence shows that Redbubble has done everything reasonably within its ability – and took steps beyond its legal obligations – to prevent sales of products using the phrase "Lettuce Turnip the Beet" in the product name, description or tags, regardless of whether those products actually infringe LTTB's trademark rights.  Redbubble has, in every instance, promptly taken down allegedly infringing listings upon receiving takedown notices; Redbubble has proactively searched the site on a regular and frequent basis to locate and remove listings that contain the phrase "Lettuce Turnip the Beet"; and more recently, Redbubble has added the phrase "Lettuce Turnip the Beet" to a new program that prevents listings containing this phrase in user generated fields (e.g., listing titles, descriptions or tags) from appearing on the site until they have been reviewed by a member of Redbubble's Marketplace Integrity Team.

The proof of Redbubble's efforts is in the pudding:  Since January 23, 2014 – *i.e.,* from the earliest start of the statute of limitations period indisputably applicable to this case – ***only a single product*** bearing the phrase "Lettuce Turnip the Beet" has been sold through the Redbubble Marketplace, other than to LTTB's principal or persons acting on her behalf.  That anomalous sale in February 2015 – of a single t-shirt bearing the phrase "Lettuce Turnip the Beet" – for 40 Australian dollars, or roughly 28 U.S. dollars, netted Redbubble a service fee totaling $15.26 Australian, or ***less than 11 U.S. Dollars***.

Remarkably, LTTB argues that this single sale has "been nearly fatal to LTTB's business" and entitles LTTB to a windfall of hundreds of thousands of dollars in damages from Redbubble.  There is no basis in law, fact, or reason for LTTB's claims.  Accordingly, Redbubble requests entry of summary judgment in its favor on LTTB's Complaint, and that LTTB's cross-motion for summary judgment be denied.

## II.     ARGUMENT

### A.     Redbubble Has Not Engaged in Conduct that Could Subject It to Liability for Trademark Infringement.

Nothing in LTTB's Opposition and Motion seriously challenges the undisputed facts set forth in Redbubble's motion.  Redbubble cannot be liable for direct infringement because it has not itself made ***any*** "use," let alone a colorably infringing use, of the marks at issue.  Redbubble cannot be liable for contributory infringement because it timely removed alleged infringements identified by LTTB and has made significant proactive efforts to prevent colorable infringement on the Redbubble Marketplace.  And Redbubble cannot be liable for counterfeiting because it had no actual or constructive knowledge of its users' infringement, and because no "stitch-for-stitch" copy of an LTTB product was actually sold through the Redbubble Marketplace.

#### 1.     Redbubble Cannot Be Liable for Direct Trademark Infringement.

##### a)     *Redbubble Does Not Sell, Offer for Sale, or Distribute Allegedly Infringing Goods.*

LTTB's Opposition and Cross Motion concedes, as it must, that "Redbubble's use of [LTTB's mark] on or in connection with the 'sale, offering for sale, distribution or advertising of goods'" is an "essential" element of its claims.  [Dkt. No. 42 (LTTB Br.) at 13]; *see* 15 U.S.C.

§ 1114(1).  Here, however, the undisputed facts establish that Redbubble is merely a transactional intermediary of a type that courts have consistently held immune from direct infringement liability. [*See generally* Dkt. No. 36 (Redbubble Mot.) at 13-16.]

LTTB's Opposition and Cross Motion asserts in conclusory fashion that "Redbubble offered for sale, advertised, sold and distributed" counterfeit or infringing products.  But LTTB does not seriously argue that Redbubble itself sells or distributes the accused products.  Nor does LTTB dispute or even address the evidence and authorities discussed at pages 4-6 of Redbubble's motion that demonstrate beyond question that third parties, not Redbubble, sell and distribute the products offered through the Redbubble Marketplace.  *See also Ohio State Univ. v. Redbubble, Inc.*, 369 F. Supp. 3d 840 (S.D. Ohio 2019).

LTTB halfheartedly suggests that Redbubble "offers for sale" the products sold through its Marketplace.  But as LTTB effectively concedes in its Opposition and Cross-Motion, Redbubble does not itself make any offer for sale; rather, allegedly "counterfeit and infringing products … [are] offered for sale on its site" by third party sellers.  [Dkt. No. 42 (LTTB Br.) at 2 (arguing that Redbubble "should be required to prevent" infringing products from being offered, not that it should stop offering such products).]

Indeed, Redbubble cannot offer to sell the allegedly infringing products for the simple reason that those products are not Redbubble's to sell.  As the *Milo & Gabby* court held, even where payments for infringing products were "made directly to [a defendant, which] issues the invoice and tracking information; … ships the products in a box that bears [defendant's] logo; and … broadcasts email advertisements from its own account (not the manufacturer's) offering the knockoff," the fact that "third-party sellers retain full title to and ownership of the inventory sold by the third party" precludes a finding that the defendant offered those products for sale.  *Milo & Gabby, LLC v. Amazon.com, Inc.*, No. 2:13-cv-01932-RSM, 2015 WL 4394673, at *2, 6 (W.D. Wash. July 16, 2015), *aff'd* 693 F. App'x 879 (Fed. Cir. 2017) (internal quotations omitted).[1]

_____

[1] LTTB asserts that "*Milo & Gabby* … addressed a claim for direct *copyright* infringement, not trademark infringement," and suggests that that opinion's discussion of trademark infringement was a typographical error.  Dkt. 42 at 15-16 (emphasis in original).  In fact, a review of the

Contrary to the assertions made in LTTB's Opposition, courts addressing infringement claims against intermediary online marketplaces like Redbubble, as opposed to claims against entities that themselves make or sell the accused goods, have uniformly held that such intermediaries cannot be held liable for direct infringement because they are not product sellers and do not otherwise "use" the marks through their sites.  For example, in *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F. 3d 93, 103 (2nd Cir. 2010), in addition to its detailed discussion of contributory infringement, the Court of Appeals affirmed a finding of no direct trademark infringement after noting that eBay never took possession of items sold through its marketplace and did not directly sell allegedly infringing products to customers; LTTB never addresses this case in its papers.  *See also GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457 (S.D.N.Y. 2011) (while the definition of a "seller" in the trademark context is not clear, "in other contexts a transactional intermediary is not treated as a seller," and "[w]hen parties act as intermediaries for a transaction…, no sale between them has occurred"); *Hendrickson v. Amazon.com, Inc.*, 298 F. Supp. 2d 914 (C.D. Cal. 2003) ("Amazon merely provided the forum for an independent third party seller to list and sell his merchandise" and was not "actively involved in the sale").  Indeed, LTTB has not cited, and Redbubble is unaware of, a single instance in which an online marketplace that neither makes nor sells allegedly infringing products has been held liable for *direct* trademark infringement.

LTTB's attempts to dismiss the district court's decision in favor of Redbubble on these issues in the *Ohio State* case are without merit.  LTTB argues that the case at hand is different because in the *Ohio State* case, the court found allegations that Redbubble advertised the allegedly infringing marks to be too conclusory.  However, as discussed in more detail *infra* at b), LTTB's argument that Redbubble affirmatively used "Lettuce Turnip the Beet" in advertising is no better supported, because the undisputed evidence demonstrates that Redbubble does not use LTTB's marks or

---

briefing leading to that order makes clear that *both* trademark *and* copyright infringement were at issue, and that Amazon raised the same theories in defense of both claims.  [*See, e.g.*, Dkt. No. 48 (Masur Decl.), Exh. A (*Milo & Gabby, LLC v. Amazon.com, Inc.*, No. 2:13-cv-01932-RSM, Dkt. No. 30 (W.D. Wash., June 11, 2015)) (Amazon Summary Judgment Motion), at 21-22 (section titled "Amazon, as an Online Intermediary That Takes Reasonable Steps to Prevent the Sale of Counterfeit Goods on Its Website, Cannot Be Held Liable for Trademark Infringement Under 15 U.S.C. § 1125(a)(1)(A)").]

1    otherwise actively select content for the advertisements that LTTB alleges are infringing.

2        LTTB also incorrectly argues that the district court in *Ohio State* "disregard[ed] Redbubble's

3    use of Ohio State's marks on the Redbubble web site."  [Dkt. No. 42 (LTTB Br.) at 17.]  To the

4    contrary, as LTTB concedes in the second half of that same sentence, the district determined, based

5    on the evidence, "that Redbubble did not place those marks there." *Id.; see also Ohio State*, 369

6    F.Supp.3d at 847 (OSU's argument "ignores the fact that Redbubble is not the one placing Ohio

7    State's marks on its website.  Rather, the marks are uploaded by the independent artists").  As in

8    *Ohio State*, it is undisputed here that in each instance that LTTB's marks have appeared on the

9    Redbubble Marketplace, they have been put there by the third-party seller.  [*See, e.g.*, Dkt. No. 39-1

10   (Cantil-Voorhees Decl., Ex. A) (listing each allegedly infringing listing on the Redbubble

11   Marketplace with identifying information for creator of work).]  Given these facts, this court should

12   hold, consistent with *Ohio State* and the uniform case law on point, that uses of the marks on the

13   website are made exclusively by the user, not the marketplace.[2]

14       LTTB also attempts to avoid the force of the consistent case law refusing to impose direct

15   trademark infringement liability on online intermediaries like Redbubble and Amazon by asserting

16   without citing to any evidence or providing any explanation that Amazon "has a very different

17   business model."  However, as discussed in detail at pages 14-16 of Redbubble's Motion, the two

18   marketplaces' business models are quite similar as they relate to potential liability for trademark

19   infringement.  Indeed, the ways in which they differ – most significantly, Amazon, unlike

20   Redbubble, stores, packages, and ships products sold on its marketplace – confirm that Redbubble

21   plays even less of a role in any alleged infringement through its marketplace.

22       LTTB also asserts at page 16 of its Opposition that there are "several cases that are more

23   directly on point [that] have held that on-demand printers such as Redbubble are directly liable for

24   trademark infringement." However, in each of the cases cited by LTTB, liability was imposed

25   _____

26   [2] The only case cited by LTTB to support its use argument, *Marketquest Group, Inc. v. BIC Corporation*, 316 F. Supp. 3d 1234, 1287-88 (S.D. Cal. 2018), is fully consistent with this

27   authority, since in *Marketquest* there was no dispute that the plaintiff had itself used the mark in question by uploading it to its website. *Id.* at 1287. In contrast, here there is no dispute that third-

28   parties, not Redbubble, uploaded the content in question to the Redbubble Marketplace.

1    because the defendant itself made and sold the accused products.  *See H-D U.S.A., LLC v. SunFrog,*

2    *LLC*, 311 F. Supp. 3d 1000, 1030 (E.D. Wisc. 2018) (defendant SunFrog itself both made and sold

3    the infringing products); *Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 917, 919 (S.D. Ohio

4    2014) (same); *Born to Rock Design Inc. v. CafePress.com, Inc.*, No. 10 Civ. 8588(CM), 2012 WL

5    3954518 (S.D.N.Y. Sept. 7, 2012) (same).  In contrast, there is no dispute that Redbubble itself

6    neither made nor sold the accused products in this case.  Indeed, the court in *Ohio State v. Redbubble*

7    distinguished LTTB's cases on precisely this basis.  *See, e.g.,* 369 F.Supp.3d at 846 ("Redbubble's

8    actions put it closer to the auction house side of the spectrum than to … companies like CafePress

9    and SunFrog that themselves manufacture and ship infringing products to the customer").

10          Finally, LTTB argues that Redbubble has violated LTTB's "service mark" because it has

11   purportedly "provided the service of allowing the design of infringing apparel and then offering

12   those items for sale on Redbubble's website using the LTTB Mark in URLs, meta tags, product

13   descriptions and on the website itself."  [Dkt. No. 42 (LTTB Br.) at 18.]  But LTTB does not and

14   cannot explain how "allowing the design of infringing apparel" could constitute a "use" of the

15   phrase "Lettuce Turnip the Beet" sufficient to constitute trademark infringement (or, for that matter,

16   what specific conduct Redbubble engages in to "allow" third-parties to create such design).  And as

17   previously discussed, the undisputed facts establish that any "offering items for sale on Redbubble's

18   website" or "using the LTTB Mark in URLs, meta tags, product descriptions and on the website

19   itself" is done by third-party sellers, not Redbubble.

20                    *b)  Redbubble Did Not Advertise Infringing Products.*

21          LTTB's argument that Redbubble "used" the mark in advertising fares no better, as it is

22   completely unsupported by any evidence.  Citing solely to pages 26:25-27:20 and 173:8-25 of the

23   Toy Deposition, LTTB asserts that "Redbubble has admitted that it places ads such as these [i.e., ads

24   on Google and other Internet sites], these ads are not directed by third parties, and Redbubble places

25   these ads to drive traffic to its website and increase sales of the products offered there." But the cited

26   passages say nothing of the sort.  Rather, on pages 26-27, when asked "does Redbubble purchase

27   advertising on Google on behalf of the users in its marketplace, Mr. Toy testified that "Redbubble

28   doesn't do it. It's an automated system."  Similarly, the cited passages on page 173 merely state that

1  when Redbubble removes listings from its marketplace, the automated system automatically

2  removes the listing from the advertising feed.  There is nothing even resembling Redbubble's

3  purported "admissions" in the cited passages.  And after LTTB obtained the testimony from

4  Redbubble that Redbubble's advertising was placed using automated systems, LTTB never asked

5  about how those systems work, or for further details about Redbubble's advertising activities.

6      Although Redbubble (like countless other companies) does purchase advertising space from

7  Google, LTTB's description of the way that it believes that Ads by Google and other internet

8  advertising works is unsupported by the record, and indeed lacks any basis in reality.  Despite

9  LTTB's speculation to the contrary, Redbubble never purchased even a single advertisement

10  specifically for a listing that LTTB asserts are infringing.  Rather, "Google, not Redbubble, decides

11  the contents of the advertisements that a user sees.  Redbubble pays for ad space, but Google decides

12  what fills it."  [Dkt. No. 47 (Toy Opp. Decl.) ¶ 5.]

13      More specifically, "Redbubble's marketplace software automatically creates a 'feed' to be

14  used by Google to serve advertisements."  [*Id.* ¶ 6.]  Google's own documentation represents that

15  such "[a] feed is a file made up of a list of products which use groupings of attributes that define

16  each one of your products in a unique way."  [*Id.* Exh. 1.]  "The feed that the Redbubble marketplace

17  software provides to Google includes every active listing on redbubble.com that either (a) has been

18  viewed in the past year, or (b) has been added to the site in the last 30 days.  For each of those

19  listings, the feed includes artist-generated text fields and a graphic.  This feed is created

20  automatically and updated continually by the marketplace software."  [*Id.* ¶ 7.]

21      "When Redbubble purchases ad space from Google, Google's software automatically decides

22  which listings in Redbubble's feed will be displayed to any particular user in the context of any

23  particular ad."  [*Id.* ¶ 9.]  This explains Ms. Gorski's testimony that "[o]n May 17, 2013, I was led to

24  Redbubble's website after seeing their counterfeit t-shirt pull up first in Google search results for the

25  LTTB brand."  [Dkt. No. 43 (Gorski Decl.) ¶ 17.]  The reason she saw an allegedly infringing shirt is

26  simple:  Although Redbubble had purchased advertising *space* in general on Google's search results,

27  Google's ad serving software, not Redbubble, decided what specific content would fill that space.

28  [Dkt. No. 47 (Toy Opp. Decl.) ¶ 9.]  Google's public documentation explicitly represents that it will

1   select content to shown to users of Google Search based on that user's "current search query."  [*Id.*

2   Exh. 2.]  Ms. Gorski's search for the phrase "Lettuce Turnip the Beet" therefore caused Google to

3   select and display a listing from Redbubble's feed that matched that phrase to an artist-created text

4   field.  [*Id.* ¶ 9.]

5          Google's ad serving software behaves similarly in other web advertising environments.

6   When Redbubble purchases a Google ad on a site, such as one visited by Ms. Gorski, Google's ad

7   serving software attempts to "personalize ads so they're more useful to" her.  [*Id.* Ex. 2.]  Google

8   explains that the reasons why a user sees a specific ad include the user's "[p]revious search activity,"

9   her "activity while [she was] signed in to Google" (including Gmail), her "previous interactions with

10  ads," and the "[t]ypes of websites [she] visit[ed]."  [*Id.* Exh. 2, ¶ 10.]  Ms. Gorski's interest in

11  "Lettuce Turnip the Beet" was established by her prior interactions with Google sites, including

12  searches on and clicking on ads that included that phrase.  [*Id.*]

13         In sum, the only competent evidence regarding Redbubble's role in advertising that Ms.

14  Gorski has documented establishes that Redbubble did not itself use Ms. Gorski's trademarks in

15  advertising.[3]

16         Redbubble purchases ad space on Google and other websites that Ms. Gorski, like
        many people, often use.  Google's ad serving software, not Redbubble, selected the
17      specific content that was shown to Ms. Gorski from among the millions of listings
        in Redbubble's feed, based on her interests.  Because Ms. Gorski demonstrated an
18      interest in the phrase "Lettuce Turnip the Beet" through her web activity, Google's
        ad serving software selected listings in Redbubble's feed that the artist had
19

20  _____

21  [3] Pursuant to Civ. L.R. 7-3(a) and 7-3(c), Redbubble objects to LTTB's testimony regarding
    search term and other advertising LTTB attributes to Redbubble, contained in paragraphs 17, 18,
22  20, and 21 to the Gorski Declaration [Dkt. No. 43], on the grounds that such testimony lacks
    evidentiary foundation and consists of speculation and unqualified expert opinion that was not
23  disclosed as required by Fed. R. Civ. P. 26(a)(2).

24  Redbubble notes that LTTB has submitted objections to certain evidence proffered by Redbubble
    in a separate docket entry.  [Dkt. No. 45.]  Because Civ. L.R. 7-3(a) and 7-3(c) require that "[a]ny
25  evidentiary and procedural objections to the motion must be contained within the brief or
    memorandum," Redbubble has incorporated its objections to LTTB's evidence within the body of
26  this brief.  As for LTTB's objections, Redbubble submits that Mr. Toy's testimony is not hearsay
    because it is offered regarding the effect on the listener, and paragraph 1 of the Toy Declaration
27  [Dkt. No. 38], which describes Mr. Toy's job responsibilities, establishes the foundation for his
    personal knowledge.
28

described using that phrase.  But Redbubble has never specifically attempted to advertise any particular listing that used the phrase "Lettuce Turnip the Beet."

[Dkt. No. 47 (Toy Opp. Decl.) ¶ 11].  The Court should accordingly enter summary judgment that Redbubble's ad purchases cannot expose it to liability.

### c)   Redbubble's Removal of Allegedly Infringing Listings Cannot, as a Matter of Law, Create Liability.

LTTB argues – without citing even a single authority – that Redbubble has somehow admitted liability by accommodating LTTB's demands that Redbubble remove listings that LTTB has alleged are infringing.  Specifically, LTTB claims that "Redbubble has also conceded that [the allegedly infringing] items bear counterfeit copies of the LTTB Mark because Redbubble has removed them from its website and stopped offering them for sale.  If Redbubble believed that it was permissible to offer these items for sale, then it would have no reason to remove them."  [Dkt. No. 42 (LTTB Br.) at 15 (citations omitted).]  LTTB's inability to proffer any support for this argument is telling.

As an initial matter, LTTB ignores the explicit requirements of Federal Rule of Evidence 407:  "When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove … culpable conduct."[4]  If the fact that Redbubble subsequently removed allegedly infringing listings from its site cannot be used as evidence of culpable conflict, it surely cannot be used as an *admission* thereof.[5]

More fundamentally, to Redbubble's knowledge, no court has ever held an internet site liable

---

[4] Pursuant to Civ. L.R. 7-3(a) and 7-3(c), for the avoidance of doubt, Redbubble objects to this argument by LTTB pursuant to Fed. R. Evid. 407.

[5] In the specific context of internet sites that host content uploaded by their users, the theory that a site that retained the right to remove that content might be liable therefor appears to find support only in the anomalous case of *Stratton Oakmont, Inc. v. Prodigy Services Co.*, 23 Media L. Rep. 1794 (N.Y. Sup. Ct. 1995).  In *Stratton Oakmont*, a New York State Court permitted an online service to be treated, in the context of a defamation claim, as a publisher of its users' content.  That decision prompted a swift and firm backlash against its core holding that an internet site could be liable for content it hosts.  Congress, in particular, quickly adopted the internet provider immunity provisions of the Communications Decency Act of 1996, 47 U.S.C. § 230, and the notice and takedown provisions of the Digital Millennium Copyright Act of 1998, 17 U.S.C. § 512.

for trademark infringement because the site has **removed** allegedly infringing content.  To the contrary, courts have consistently held that removing potentially infringing content is the appropriate way to avoid liability for contributory infringement.  *See, e.g.*, *Tiffany*, 600 F.3d at 103 (affirming noninfringement determination).  Even the case law cited by LTTB in support of its other theories confirms as much.  For example, *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229 (10th Cir. 2013), found potential liability for contributory infringement because "a reasonable jury could find that [defendant] **knew** that at least one of its [putative agents] was publishing an ad bearing [plaintiff]'s mark, **yet it did not take reasonable action to promptly halt the practice**."  *Id.* at 1254-55 (emphasis added).  In other words, *1-800 Contacts* found a defendant potentially liable for contributory infringement precisely because it failed to perform the very acts that LTTB claims to be a concession of liability.  LTTB's position is thus unsupported even by the precedent it cites.

Even were there no precedent – much less the overwhelming precedent that exists – against treating takedown procedures as an admission of liability, LTTB's position would still be untenable. LTTB asked Redbubble to remove postings.  Redbubble complied with LTTB's request.  That requested act of compliance cannot create liability.  The alternative would be a Hobson's choice – ignore LTTB's takedown demands and face potential liability, or comply and face certain liability – that would serve no interests but those of litigation counsel.

### 2.   Redbubble Cannot Be Liable for Contributory Trademark Infringement

LTTB does not dispute that its contributory infringement claim requires proof both that Redbubble continued to provide products or services "to one whom it knows or has reason to know is engaging in trademark infringement," *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 854 (1982), and that Redbubble had "direct control and monitoring of the instrumentality used by a third party to infringe…." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999).  [*See* Dkt. No. 42 (LTTB Br.) at 22.]  LTTB cannot so prove.

LTTB appears to suggest that, once it notified Redbubble that a single user had created a listing with the phrase "Lettuce Turnip the Beet," Redbubble had an obligation to police all future uses of that phrase, whether textual, graphical, or merely in "tags."  However, it is well-established

1    that "[t]he mere assertion by a trademark owner that a [product] infringes its mark is not sufficient to

2    impute notice of infringement to the defendant.  The use of an identical or similar mark does not

3    necessarily constitute infringement."  *Spy Phone Labs LLC v. Google Inc.*, No. 15-cv-03756-KAW,

4    2016 WL 6025469, at *5 (N.D. Cal., Oct. 14, 2016) (quoting *Lockheed Martin*, 985 F. Supp. at 963).

5    In *Lockheed Martin*, the court held that "[a] reasonable person in [the defendant's] position could not

6    presume infringement even where the [allegedly infringing] domain name is identical to a mark and

7    registered for use in connection with a similar or identical purpose." 985 F. Supp. at 963.  This

8    principle is particularly applicable here, where (as reflected in Exhibit 6 to the Gorski Declaration),

9    LTTB has accused dozens of different designs of infringement, some of which do not even bear the

10   phrase "Lettuce Turnip the Beet," and all of which use the phrase in an ornamental sense.

11          Consistent with the above-referenced principle, liability cannot be imposed for contributory

12   trademark infringement unless and until the defendant has specific notice that a specific product or

13   design is infringing.  Put another way, "[s]ome contemporary knowledge of which ***particular***

14   ***listings*** are infringing or will infringe in the future is necessary." *Tiffany*, 600 F.3d at 108-09

15   (emphasis added); *see also*, *e.g.*, *Spy Phone Labs*, 2016 WL 6025469, at *4 (quoting same);

16   *Academy of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*, No. CV 10-03738 AB (CWX), 2015

17   WL 5311085, at *33 (C.D. Cal. Sept. 10, 2015) (same).

18          LTTB's reliance on the 10th Circuit's opinion in *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722

19   F.3d 1229 (10th Cir. 2013) is unavailing.  Contrary to LTTB's assertion, the court in *1-800 Contacts*

20   did not hold that "knowledge of the identity of a particular offender ***or offense*** would *not* be required

21   to impose contributory liability."  [Dkt. No. 42 (LTTB Br.) at 23.]  To the contrary, in *1-800*

22   *Contacts*, the defendant knew for months that one of its affiliates (which the court assumed, without

23   deciding, was an agent of the defendant) had placed a specific infringing advertisement, but the

24   defendant had done nothing to stop it.  Defendant argued that it was not liable because it had been

25   conducting an investigation to determine the identity of the offending affiliate, but failed to take the

26   simple step of ordering the manager of its affiliates to send an email to all of defendant's affiliates

27   directing them to pull the offending ad.  Under these circumstances, the Court of Appeals not

28   surprisingly overturned a summary judgment in defendant's favor on a contributory infringement

claim, finding that a reasonable jury could have found that the defendant "did not take reasonable action to promptly halt" the infringing advertisement in the three months after it learned of that ad. *Id.* at 1254-55.  This opinion has nothing whatsoever to do with *Tiffany Inc. v. eBay*'s requirement that a defendant must have knowledge of specific infringements.[6]

Here, as discussed in detail in Redbubble's Motion, Redbubble did not obtain knowledge of specific purported infringements at least until receiving notification from LTTB of particular listings that LTTB contended infringed.  Under *Spy Phone Labs* and *Lockheed Martin*, even those specific notifications were arguably inadequate to establish the knowledge required for contributory infringement liability.  And there is no dispute that upon receiving such notifications, Redbubble promptly and consistently removed the allegedly infringing content.

Moreover, there is no genuine dispute that, as Redbubble developed new technology for combatting potential infringement – specifically including the then-experimental ACE tool – it included the "Lettuce Turnip the Beet" phrase in the limited set of terms flagged for review.  [*See* Dkt. No. 38 (Toy Decl.) ¶ 18.]  Nor is there any dispute that ***it has been over four years since an allegedly infringing listing has resulted in even a single sale of an item bearing the phrase "Lettuce Turnip the Beet" being consummated through the Redbubble Marketplace, except to LTTB's principal or someone acting at her direction.***  [*See* Dkt. No. 36 (Redbubble Mot.) at 17; *see also* Dkt. No. 39-2 (Cantil-Voorhees Decl.), Ex. B, (listing each sale of any item LTTB claims to be infringing).]

Faced with those facts, a reasonable jury would have no choice but to conclude that

---

[6] LTTB's citation to *Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 917 (S.D. Ohio 2014), [Dkt. No. 42 at 24], is similarly inapposite.  Unlike Skreened, which manufactures and sells products directly to customers, third-parties – not Redbubble – make and sell the products offered on the Redbubble Marketplace. "[A] visitor to the [Skreened] website can peruse the various shops and order a displayed item. Skreened then fulfills each order on demand. For example, when a customer orders a single t-shirt with a specific design, Skreened then prints one t-shirt featuring that design for that specific customer."  16 F. Supp. 3d at 908.  Because it is undisputed that Redbubble does nothing of the sort, it is hardly surprising that the same court that found Skreened liable for trademark infringement distinguished Skreened's business model from Redbubble's and granted summary judgment to Redbubble accordingly.  *Ohio State v. Redbubble*, 369 F. Supp. 3d at 847 (citing *Skreened Ltd.*, 16 F. Supp. 3d at 908).

1   Redbubble's efforts to prevent the sale of products bearing the "Lettuce Turnip the Beet" phrase

2   have been overwhelmingly effective.  The lengths to which Redbubble has gone to prevent

3   infringement by third-party sellers utilizing the Redbubble Marketplace precludes proof of

4   contributory infringement, and summary judgment is mandated.

5              3.       **Redbubble Cannot Be Liable for Trademark Counterfeiting.**

6                   *a)   There Is No Evidence that Redbubble Allowed Sales of Allegedly*
                         *Infringing Products with Knowledge Thereof.*
7

8          According to LTTB, "the undisputed evidence shows that Redbubble allows infringing and

9   counterfeit products to be sold (and collects its share of the revenues from these sales) even after it

10  has actual knowledge of such listings."  [Dkt. No. 42 (LTTB Br.) at 23 (citing Dkt. No. 44 (Faucette

11  Decl.) Ex. 1 at 133:15-136:25; Dkt. No. 43 (Gorski Decl.) ¶¶ 24-25).]  LTTB ignores, however, that

12  after LTTB's principal complained about a specific listing, and Redbubble thereby obtained actual

13  knowledge of its alleged infringement, each listing was taken down sufficiently quickly that the only

14  consummated sales were delivered to her "or someone acting at [her] direction."  [Dkt. No. 43

15  (Gorski Decl.), ¶ 24.]  The fact that "Redbubble has never cancelled an order for an infringing and/or

16  counterfeit product," where such order was placed by LTTB itself or someone acting at its direction,

17  *see id.*, is immaterial – those orders never could have been infringing, because they were placed by

18  an authorized person.  Arguing that Redbubble failed to prevent LTTB's self-inflicted injuries may

19  merit a "chutzpah award,"[7] but it cannot be a theory or factual basis on which LTTB could prevail.

20  By contrast, LTTB presents no evidence that it gave actual pre-sale notice of the single listing for the

21  item bearing the phrase "Lettuce Turnip the Beet" for which the sale was consummated through the

22  Redbubble Marketplace in the limitations period.

23         As set forth in Redbubble's opening brief [Dkt. No. 36 at 17], LTTB also cannot prevail on

24  its counterfeiting claim because it cannot demonstrate that Redbubble "intentionally used a

25

26  [7] *See Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1271 (Fed. Cir. 1998)
    ("'chutzpah' awards" are appropriate where litigants press theories akin to "a person who kills his
27  parents and pleads for the court's mercy on the ground of being an orphan"); *accord, e.g.*, *Google
    Inc. v. Rockstar Consortium U.S. LP*, No. C 13-5933 CW, 2014 WL 1571807, at *4 (N.D. Cal.,
28  Apr. 17, 2014) (quoting same).

counterfeit mark in commerce knowing the mark was counterfeit." *State of Idaho*, 425 F.3d at 721.

LTTB counters that "the Ninth Circuit expressly held in *Louis Vuitton* [that] 'intent is not required'

so long as Redbubble 'provided their services with actual or constructive knowledge that the users of

their services were engaging in trademark infringement.'"  [Dkt. No. 42 (LTTB Br.) at 22 (citing

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 943 (9th Cir. 2011)).]

However, LTTB ignores that, in context, the quoted portion of *Louis Vuitton* dealt solely with

whether a trial court correctly instructed a jury on the law of liability for contributory infringement:

"Plaintiffs asserting contributory trademark infringement claims must prove that defendants

provided their services with actual or constructive knowledge that the users of their services were

engaging in trademark infringement.  An express finding of intent is not required."  658 F.3d at 943

(citations omitted).  Notwithstanding LTTB's characterization, *Louis Vuitton* does not countenance

counterfeiting without knowledge of specific infringement or intent.

### b)  No "Stitch for Stitch" Copies of LTTB's Products Were Sold on the Redbubble Marketplace.

As set forth in Redbubble's opening brief, and not disputed by LTTB, counterfeiting is

"'hard core' or 'first degree' … trademark infringement."  [*See, e.g.*, Dkt. No. 36 at 16-17 (citing,

*inter alia*, *Align Tech., Inc. v. Strauss Diamond Insts., Inc.*, No. 18-CV-06663-TSH, 2019 WL

1586776 (N.D. Cal. Apr. 12, 2019).]  "[A] claim for 'counterfeiting' under the Lanham Act must, by

necessity, first establish a claim of trademark infringement" – which, as set forth above and in

Redbubble's opening brief, LTTB cannot do.  *Ketab Corp. v. Mesriani Law Group*, 2015 WL

2084469, at *3 n. 6 (C.D. Cal. May 5, 2015).  Counterfeiting additionally requires proof that

"(1) [defendant] intentionally used a counterfeit mark in commerce; (2) knowing the mark was

counterfeit; (3) in connection with the sale, offering for sale, or distribution of goods; and (4) its use

was likely to confuse or deceive."  *State of Idaho Potato Commission v. G&T Terminal Pack, Inc.*,

425 F.3d 708, 721 (9th Cir. 2005).

1    Moreover, as set forth in Redbubble's opening brief and not challenged by LTTB, courts in

2 this Circuit consistently limit the definition of counterfeit to "products that are ***stitch for stitch***

3 ***copies*** of those of another brand." *Align Tech.*, 2019 WL 1586776 at *11 (emphasis added); *accord,*

4 *e.g.*, *State of Idaho*, 425 F.3d at 721.***Error! Bookmark not defined.***  Thus,



5 the law requires comparison of the allegedly counterfeit products with the

6 plaintiff's products, not with its trademark registration.  *Align Tech.*, 2019

7 WL 1586776 at *11.   LTTB has proffered no evidence or argument that the

8 only allegedly infringing product bearing the phrase "Lettuce Turnip the

9 Beet" that was sold to a third party through the Redbubble Marketplace

10 since January 23, 2014 – the t-shirt shown at right – is "stitch for stitch" identical to any LTTB

11 product.  [Dkt. No. 37 (Wilson Decl.) Exh. E.]  Indeed, LTTB significantly omitted this design from

12 the purportedly "most egregious examples of counterfeit products," thereby effectively conceding

13 that this listing is not "stitch for stitch identical."  [Dkt. No. 43 (Gorski Decl.), ¶ 22 and Exh. 7.]

14    **B.    The Statute of Limitations Bars the Vast Majority of LTTB's Claims.**

15    LTTB does not dispute that a four-year statute of limitations applies to its claims, nor does it

16 dispute that the vast majority of the allegedly infringing sales here occurred more than four years

17 before filing this lawsuit, and that LTTB was aware of its claims more than four years before suit

18 was filed.  [*See* Dkt. No. 36 (Redbubble Mot.) at 19.]  Indeed, LTTB addresses this issue only in a

19 footnote, arguing in two sentences that this defense is somehow "moot" because allegedly infringing

20 conduct occurred within the four years before suit was filed.  That, however, is not the law.

21    Regardless of whether allegedly infringing conduct occurred during the period *not* barred by

22 the statute of limitations, the statute of limitations is an absolute bar "as to damages beyond the

23 statutory period."  *Jarrow Formulas, Inc. v. Nutrition Now Inc.*, 304 F.3d 829, 838 (9th Cir. 2002)

24 (quoting 4 J. Thomas McCarthy, Trademarks and Unfair Competition § 31.33 (4th ed. 2001)).

25 Thus, Redbubble is entitled to a determination that LTTB cannot recover with respect to any alleged

26 infringements that occurred on or before January 23, 2014.  Such a determination is necessary and

27 significant, since it greatly limits the scope of listings that needs to be examined for purposes of

28 assessing aesthetic functionality or potential damages.

C.      **LTTB Cannot Show That Any of the Accused Listings Violate Its Trademark Rights Because the Allegedly Infringing Uses Are All Ornamental, Not Source Identifying.**

As set forth in Redbubble's opening brief, even if Redbubble might otherwise face any liability – which it does not – LTTB's claims would nonetheless fail under the doctrine of "ornamental use" or "aesthetic functionality." [8]

LTTB has not disputed that the Trademark Office properly rejected LTTB's original application for the "Lettuce Turnip the Beet" mark in which the specimen submitted consisted in relevant part of a T-Shirt with the phrase in large letters across the middle as an ornamental use. [Dkt. No. 37 (Wilson Decl.), Ex. B.]  As the Trademark Office noted in that Office Action, "[t]he consumer is likely to assume from this type of usage that the mark is merely a decorative feature of the items and does not indicate the source of each item from those of others." [*Id.*]

LTTB also has not disputed that to the extent the accused products in this case use the phrase "Lettuce Turnip the Beet," such uses consist of precisely the same depictions of the phrase "Lettuce Turnip the Beet" (e.g., prominently displayed in large letters on the front of a T-shirt) that the Trademark Office found would not be a source-identifying use of the type protected by trademark law.  And as noted in Redbubble's opening brief [Dkt. No. 36 at 22], and unrebutted in LTTB's Opposition, LTTB has conceded that consumers do not associate the phrase "Lettuce Turnip the Beet" with plaintiff; that consumers purchase products with the "Lettuce Turnip the Beet" phrase because they like the message, not because it identifies the source as plaintiff LTTB; and that there is no evidence that anyone was confused as to the source of the accused products.  [Dkt. No. 37 (Wilson Decl.) Exh. D (LTTB Depo.) at 50-55, 78-83, 262-63.]

This undisputed evidence mandates a determination as a matter of law that the accused products use the phrase "Lettuce Turnip the Beet" in an ornamental and therefore non-infringing manner.  *See, e.g., International Order of Job's Daughters v. Lindeburg & Co.,* 633 F.2d 910 (9th

---

[8] Contrary to LTTB's assertion [*see* Dkt. No. 42 at 20], Redbubble has not claimed that the doctrine invalidates LTTB's mark.  The fact that the "Lettuce Turnip the Beet" trademark application was initially rejected on precisely this basis only underscores that uses of the variety about which LTTB complains are necessarily ornamental.

Cir. 1980) (concluding that a ring that prominently displayed the Job's Daughter insignia did so in an ornamental or "functionally aesthetic" and therefore did not infringe plaintiff's trademark); *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 925 F. Supp. 2d. 1067 (C.D. Cal. 2012) (use of the "Betty Boop" name as a prominent feature of their T-shirts and other products was a non-infringing ornamental use where the phrase was used as an artistic design element," plaintiff was never identified as the source of the accused goods, and "Plaintiff has not presented a single instance of a consumer who was misled about the origin or sponsorship of Defendants' products").

Ignoring both the evidence identified in Redbubble's Motion and the 9th Circuit opinion in *Job's Daughters*, LTTB instead attempts to avoid the force of the "ornamental use" doctrine by mischaracterizing the district court's opinion in *Fleischer Studios*. Specifically, LTTB misrepresents that *Fleischer Studios* turned merely on whether the phrase "Betty Boop" could be divorced from the iconic image of the character, relying on two examples. However, a comparison of the facts in *Fleischer Studios* to the facts of this case show far more important similarities than LTTB would have the court believe. As in this case, the mark in question in *Fleischer Studios* was a word mark. As in this case, the allegedly infringing products in *Fleischer Studios* used the word mark "as a prominent feature" and as a design element independent of any source-identifying function. *Id.* at 1074. As in this case, the accused products in *Fleischer Studios* contained no indication that were sponsored by plaintiff. *Id.* And as in this case, the plaintiff in *Fleischer Studios* had "not presented a single instance of a consumer who was misled about the origin" of the allegedly infringing products. *Id.* As a result, as in *Fleischer Studios*, this court should determine on summary judgment that the accused products do not make "trademark use" of the asserted trademark and are therefore not infringing as a matter of law. *Id.* at 1073-75.

LTTB argues that the ornamental use doctrine should not be applied here because "the goods in question use the LTTB word mark accompanied in some instances by artwork, mostly depicting lettuce, turnip(s), and beet(s)," and that for such products the phrase "Lettuce Turnip the Beet" "could be removed without making the goods incomplete or nonsensical." [Dkt. No. 42 (LTTB Br.) at 21 (referencing language from *Fleischer Studios*). As an initial matter, by limiting its argument to goods where "Lettuce Turnip the Beet" is accompanied by artwork, LTTB appears to concede that

1 products that use of the phrase without artwork would be non-infringing.[9] Since virtually all of

2 LTTB's own products contain only a word mark, this concession essentially eliminates LTTB's

3 counterfeiting claim, which requires the counterfeit products be "stitch for stitch copies" of

4 plaintiff's own products.  *Align Tech.*, 2019 WL 1586776 at *11.

5       Moreover, LTTB has acknowledged that consumers purchase products with the "Lettuce

6 Turnip the Beet" phrase because they like the message.  [Dkt. No. 37 (Wilson Decl.) Exh. D (LTTB

7 Depo.) at 50-55, 262-63.]  Thus, even for accused products that include artwork along with the

8 "Lettuce Turnip the Beet" phrase, removing the phrase would render the message "incomplete" and

9 in some instances "nonsensical."  *See Fleischer Studios* at 1075.  In other words, "[i]t would be

10 obvious to the average consumer that such merchandise would be missing something." *Id.*  This is

11 one of the reasons that the *Fleischer Studios* reached its determination of ornamental use and applies

12 with similar force here.[10]

13       If Redbubble users had placed "Lettuce Turnip the Beet" collar tags in garments, those

14 hypothetical uses would have been source-identifying, and LTTB might have a viable trademark

15 infringement claim.  But there is no evidence of any such uses here.  And the actual facts of this

16 case, in which the only accused uses are ornamental and in which LTTB "has not presented a single

17 instance of a consumer who was misled about the origin or sponsorship of [any accused] products,"

18 *id.*, mandate summary judgment that any accused uses were merely ornamental.

19     **D.**    **LTTB Cannot Recover Damages on Its Claims.**

20         **1.**    **LTTB Cannot Recover Redbubble's Profits or Statutory Damages Because There Is No Evidence of Willful Infringement.**

22       LTTB's opposition and cross motion does not dispute that an award of profits or statutory

23 damages requires proof of willful infringement.  As set forth in Redbubble's opening brief, citing

[9] LTTB also now expressly concedes that LTTB makes no claims as to goods bearing simply artwork of the vegetables with no reference to or use of the word mark. LTTB Opp. at 21.

[10] For example, the only accused product bearing the phrase "Lettuce Turnip the Beet" that has been purchased by someone other than plaintiff since January 23, 2014 consists of the phrase in the middle of the shirt and an image of vegetables below it and to the left. [*See, e.g.*, Dkt. No. 36 (Redbubble Mot.) at 17]; *see also supra* at b) (discussing counterfeiting claim).

authority unchallenged by LTTB, courts generally – and in the Ninth Circuit in particular – have consistently held that infringement is not willful if the defendant reasonably believes that its usage is not barred by law.  *International Olympic Comm. v. San Francisco Arts & Athletics*, 781 F.2d 733, 738-39 (9th Cir. 1986).  As pointed out in Redbubble's opening brief and not addressed by LTTB, less than three months ago, in *VHT, Inc. v. Zillow Group, Inc.,* 918 F.3d 723 (9th Cir. 2019), the Ninth Circuit held that where users who uploaded allegedly infringing content represented that they had the legal right to do so, and website operator was not "'actually aware' of its [specific] infringing activity," any infringement could not be willful as a matter of law.  *Id.* at 749 (defendant's "agreements with its [users] grant it an express license to use, copy, distribute, publicly display, and create derivative works for each photo, and the agreements include unambiguous representations by the [users] that they have the authority to assign such rights").[11]

LTTB appears to suggest that Redbubble's reliance on its users' representations was not reasonable, arguing that "(1) Redbubble knows and has known since 2013 that its users do not have the right to use the LTTB Mark, and (2) Redbubble has the ability to identify user listings containing the LTTB word mark before those listings are offered for sale on Redbubble's website."  [Dkt. No. 42 (LTTB Br.) at 26-27.]  But the fact that Redbubble had some general knowledge of LTTB's trademark claims is not enough; "contemporary knowledge of which *particular listings* are infringing or will infringe in the future is necessary." *Tiffany*, 600 F.3d at 108-09 (emphasis added).

---

[11] LTTB attempts to distinguish *Evergreen Safety Council v. RSA Network, Inc.*, 697 F.3d 1221 (9th Cir. 2012), which found that "[c]ontinued use of a work even after one has been notified of his or her alleged infringement does not constitute willfulness so long as one believes reasonably, and in good faith, that he or she is not infringing," by asserting that that "defendant had a reasonable basis for believing it had a license to use the work—Redbubble has no basis for such a belief here given LTTB's repeated cease and desist and takedown communications."  Dkt. 42 at 26 n. 12.  But the quoted passages from *VHT* establish that user representations provide exactly such a reasonable basis.  Similarly, LTTB attempts to distinguish *Greg Young Publishing v. Zazzle, Inc.*, No. 2:16-CV-04587-SVW-KS, 2017 WL 5004719, at *3 (C.D. Cal. Oct. 27, 2017), on the grounds that that "defendant did not have the means to determine pre-publication if a listing violated the plaintiff's copyright whereas Redbubble has admitted that it can determine in real time if a user has uploaded a listing containing the LTTB word mark."  LTTB ignores that, although Redbubble has only even had experimental prescreening capability since 2017, it has included the phrase "Lettuce Turnip the Beet" in that experiment.

As set forth in Redbubble's opening papers, Redbubble has been proactively screening listings for the phrase "Lettuce Turnip the Beet" since 2014 – including, since 2017, using an experimental tool to screen user-submitted listings before they are available to the public.  [*See* Dkt. No. 36 at 12 (citing Dkt. No. 38 (Toy Decl.) ¶ 29), 8 (citing Dkt. No. 38 ¶ 16).]  The fact that a small number of allegedly infringing listings have been briefly available to the public cannot render Redbubble's actions willful infringement, particularly where the undisputed evidence shows that Redbubble removed those listings occurred sufficiently quickly that only a single item bearing the phrase "Lettuce Turnip the Beet" was delivered to a third-party purchaser during the four-year limitations period.  *See supra* at II.A.3.

LTTB simply cannot show that Redbubble has been willfully blind.  "[T]he doctrine of willful blindness hold[s] that defendants cannot escape the reach of these statutes by deliberately shielding themselves from clear evidence of critical facts that are strongly suggested by the circumstances."  *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).  To constitute "willful blindness," the defendant must (1) subjectively believe that there is a high probability that a fact exists and (2) must take deliberate actions to avoid learning of that fact."  *Id.* at 769; *accord, e.g.*, *SAS v. Sawabeh Info. Servs. Co.*, No. CV1104147, 2015 WL 12763541, at *7 n. 58 (C.D. Cal., June 22, 2015) ("In the context of a trademark infringement action, willful blindness means that a defendant knew it might be selling infringing goods but nevertheless 'intentionally shielded itself from discovering' the truth.").  "By contrast, a reckless defendant is one who merely knows of a substantial and unjustified risk of such wrongdoing, and a negligent defendant is one who should have known of a similar risk but, in fact, did not."  *Global-Tech*, 563 U.S. at 769.

The undisputed record establishes that, far from "tak[ing] deliberate actions to avoid confirming a high probability of wrongdoing," *id.* at 769, Redbubble has deliberately sought to improve its identification and interception of infringement at the earliest opportunity, even where Redbubble might otherwise have been completely and reasonably unaware of such infringement in the ordinary course of its operations.  Finding Redbubble – which has not sold *any* allegedly infringing item, and which has intentionally sought to identify potentially infringing listings – to have been willfully blind would be unprecedented.

Were LTTB correct, once an online marketplace received notice that a seller was offering a counterfeit good on its site, any subsequent offers of counterfeit goods on that marketplace – no matter what efforts the marketplace took to prevent infringing offers – would be *per se* intentional, and therefore subject to a finding of counterfeiting and enhanced statutory damages of up to $2 million per type of good.  If that were the law, no plaintiff would need to prove actual volition – *i.e.*, willfulness – for any activity once a single notice had been sent.  Reading the requirement of willfulness entirely out of the Lanham Act would render the intent requirement of the counterfeiting statute and the "additional act" required for enhanced damages a nullity, in violation of multiple rules of statutory construction.[12]

## 2.   LTTB Cannot Recover Actual Damages Because It Has No Admissible Evidence.

LTTB correctly asserts that trademark "[d]amages are typically measured by any direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned but for the infringement." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993); [*see also* Dkt. No. 42 (LTTB Br.) at 28 (quoting same)].  Although LTTB explicitly admitted at deposition that it "do[es]n't have any direct evidence" of actual damages [Dkt. No. 37 (Wilson Decl.) Exh. D (LTTB Depo.) at 195:14-196:3], LTTB now asserts conclusorily that it should be able to recover two types of actual damages:  (1) "the time spent by LTTB combating Redbubble's pervasive and repeated counterfeiting and infringement," and (2) "LTTB's estimates of the losses it has incurred from Redbubble's offers to sell, advertising, and sales of counterfeit and infringing goods based on both sales that LTTB lost as well as significant declines in LTTB's annual revenues

_____

[12] LTTB also asserts that "LTTB has provided evidence of the harm its brand has suffered as the result of the availability of counterfeit items on Redbubble's website."  [Dkt. No. 42 (LTTB Br.) at 27 (citing Dkt. No. 43 (Gorski Decl.) at ¶¶ 36-37); *see also id.* at 13 ("Redbubble's offers for sale, internet advertising, and sales of infringing and counterfeit products have also cost LTTB a significant amount in lost sales.").]  Pursuant to Civ. L.R. 7-3(a) and 7-3(c), Redbubble objects to paragraph 37 of the Gorski Declaration on the grounds that it lacks evidentiary foundation and consists of speculation and unqualified expert opinion that was not disclosed as required by Fed. R. Civ. P. 26(a)(2).  Accordingly, Redbubble objects that paragraph 37 of the Gorski Declaration [Dkt. No. 43], and the portions of LTTB's Brief that rely thereon, are inadmissible.

from the sales of goods under the LTTB Mark." [Dkt. No. 42 (LTTB Br.) at 28 (citing Dkt. No. 43 (Gorski Decl.) ¶¶36-38).][13]

---

[13] Pursuant to Civ. L.R. 7-3(a) and 7-3(c), Redbubble objects to the evidence in Exhibit 10 to the Gorski Declaration [Dkt. No. 43-10] and discussed in paragraph 25 thereto, because the information therein was not properly produced in discovery in compliance with Fed. R. Civ. P. 34.

LTTB's counsel asserts that, because it advised counsel for Redbubble at 6:20pm on March 1, 2019, the last day of discovery, that "LTTB may be producing some additional documents in response to your discovery requests before midnight tonight," it accomplished production after 10:00pm that day by placing documents in a Dropbox that it had previously used to produce documents, notwithstanding that it never advised counsel for Redbubble after the fact that it had actually done so. [Dkt. No. 48 (Masur Decl.), Exh. B; *accord id.*, ¶ 7 (screen shot showing file upload dates and times).] LTTB's counsel also asserts that "Exhibit 10 contains graphs and photographs created after the close of discovery," and therefore, by implication, that the rules permit LTTB to use the contents of that exhibit even though the underlying data and documents were not timely produced, if they were produced at all. [*Id.*, Exh. C.]

Fed. R. Civ. P. 34(b)(2)(B) requires that "production must … be completed no later than the time for inspection specified in the request or another reasonable time specified in the response." Because the latest such deadline was January 25, 2019, with LTTB's responses to Redbubble's written discovery (five weeks prior to LTTB's purported production), LTTB's purported production was untimely. [*See id.*, Exs. D (Redbubble Nov. 28, 2018 Requests for Production), E (LTTB's Jan. 25, 2019 Responses).] Second, Fed. R. Civ. P. 34(b)(2)(E)(i) requires that "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request," but LTTB did neither. Third, counsel for Redbubble are not aware of any authority for the proposition that a party can produce documents by advising opposing counsel that it might do so by placing them in a location, without subsequently advising the requesting party that it has done so.

LTTB's Response to Redbubble's Interrogatory No. 9 refers to the withheld data as "LTTB's evidence" and represents that "A graph comparing the number of legal notices submitted to the aforementioned sites since 2013 would clearly show Redbubble is the biggest repeat offender." [Dkt. No. 37 (Wilson Decl.) Exh. E (LTTB Am. Interrog. Resps.) at 7-8.] Thus, LTTB intended, at least five weeks before the close of discovery, to rely on these documents and data as its measure of actual damages. Yet LTTB failed to timely produce these documents and Redbubble was unable to question LTTB's representative at deposition thereon. The fact that "LTTB calculated the data reflected in Exhibit 10 and created photographs of the packages received from various on-demand printers" only after discovery had closed [Dkt. No. 48 (Masur Decl.), Exh. C], is irrelevant where LTTB admitted at deposition that it possessed but had not produced the data on which LTTB has performed calculations, and the packages and other materials it has now photographed appear to have predated the close of discovery as well.

LTTB's interrogatory response and deposition testimony make crystal clear that it intended to rely on documents and things in its possession that it withheld from discovery. The discovery

Strikingly, LTTB cites no law whatsoever that suggests that it is entitled to recover damages for its principal's efforts regarding alleged infringement.  The trademark statute permits "[t]he court in exceptional cases [to] award reasonable attorney fees," 15 U.S.C. § 1117(a), but does not permit a plaintiff to be compensated for its own efforts at enforcement in *any* case, exceptional or not.  Moreover, even if these efforts were compensable as damages, LTTB's calculation consists entirely of an estimate that its principal spent 515 hours in relation to this lawsuit and her investigation, multiplied by an implicit valuation of its principal's time at $100 per hour.  [*See* Dkt. No. 42 (LTTB Br.) at 12-13; Dkt. No. 43 (Gorki Decl.) ¶ 36.]  LTTB's calculation is pure speculation, as it proffers no basis from which the Court could determine a reasonable value for LTTB's principal's time, nor the value of the remunerative activities in which she might otherwise have engaged.  No reasonable jury could assess the requested damages.

As for LTTB's lost profits, *Lindy Pen* is instructive.  "To establish damages under the lost profits method, a plaintiff must make a 'prima facie showing of reasonably forecast profits.'"  982 F.2d at 1407 (citing 2 J. THOMAS MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 30:27, at 511 (2d ed. 1984)).  Here, although LTTB has alleged its revenues [*see* Dkt. No. 43 (Gorski Decl.) ¶ 38], it has not provided its actual profits, much less a reasonable forecast thereof.  Because, like the plaintiff in *Lindy Pen*, LTTB has proffered no evidence of its lost profits, LTTB cannot recover them as damages.  982 F.2d at 1407-08. [14]

As *Lindy Pen* notes, "[a] plaintiff must prove both the fact and the amount of damage," and

---

rules are intended to prevent exactly this sort of trial by ambush.  This Court should not reward LTTB's gamesmanship by allowing it to use those materials in connection with dispositive motions or trial.  Accordingly, Redbubble objects that Exhibit 10 to and paragraph 25 of the Gorski Declaration [Dkt. No. 43], and the portion of LTTB's Brief that relies thereon [Dkt. No. 42 at 11], are inadmissible.

[14] *Lindy Pen* permits LTTB to seek alternatively, as unjust enrichment, Redbubble's profits from allegedly infringing sales within the limitations period.  982 F.2d at 1407.  However, "LTTB is not seeking disgorgement of Redbubble's profits" [Dkt. No. 42 (LTTB Br.) at 27-28 n. 9], presumably because Redbubble's total revenues – revenues, not profits – for all allegedly infringing sales within the United States since January 23, 2014, was less than US$100.  [*See* Dkt. No. 39-2.]  Even LTTB, despite impermissibly failing to exclude sales prior to the limitations period, concedes that Redbubble's total revenues were "AU$1,183.56 in service fees," or approximately US$820 at current exchange rates.  [Dkt. No. 42 at 10 (citing Dkt. No. 44 (Faucette Decl.) Ex. 2).]

"[m]any courts have denied a monetary award in infringement cases when damages are remote and speculative." *Id.*  Assuming, *arguendo*, that LTTB had proved any actual injury, its failure to proffer admissible evidence of actual damages would preclude any recovery from Redbubble.

### III.     CONCLUSION

Redbubble has proffered neither evidence nor law that would permit a reasonable jury to find in its favor on any of its claims.  Redbubble does not engage in any act that might qualify as direct infringement, counterfeiting, or willful infringement.  Even if LTTB were accusing Redbubble's users of making trademark, rather than ornamental, use of the phrase "Lettuce Turnip the Beet," Redbubble's continual attempts to prevent users from doing so would preclude liability for contributory infringement.  And even if Redbubble faced theoretical liability, LTTB's failure to proffer evidence of actual damages during the limitations period would preclude recovery.

The Court should enter judgment in favor of Redbubble on LTTB's Complaint and each cause of action therein accordingly.

Dated:  May 27, 2019

COASTSIDE LEGAL
KENNETH B. WILSON

ZUBER LAWLER & DEL DUCA LLP
JOSHUA M. MASUR

By: */s/ Joshua M. Masur*
       JOSHUA M. MASUR

Attorneys for Defendant
REDBUBBLE INC.

DEFENDANT REDBUBBLE INC.'S REPLY AND OPPOSITION ON MOTIONS FOR SUMMARY JUDGMENT