JEFFREY E. FAUCETTE (No. 193066)
SKAGGS FAUCETTE LLP
One Embarcadero Center, Suite 500
San Francisco, California 94111
Telephone:  (415) 315-1669
Facsimile:   (415) 433-5994
E-mail:  jeff@skaggsfaucette.com

Attorneys for Plaintiff LTTB LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LTTB LLC, a California limited liability company,<br><br>            Plaintiff,<br><br>v.<br><br>REDBUBBLE, INC., a Delaware corporation,<br><br>            Defendant. | Case No.: 3:18-cv-509-RS<br><br>**PLAINTIFF LTTB LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date Action Filed:  January 23, 2018<br><br>Hearing:    June 13, 2019<br>Time:        1:30 p.m.<br>Place:       Courtroom 3, 17th Floor<br>Judge:      Hon. Richard Seeborg |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

I.    SUMMARY JUDGMENT SHOULD BE GRANTED IN LTTB'S FAVOR ON ITS COUNTERFEITING CLAIM ............................................................................. 2

II.   SUMMARY JUDGMENT SHOULD BE GRANTED IN LTTB'S FAVOR ON ITS TRADEMARK INFRINGEMENT CLAIM ............................................................ 4

    A.   There Is No Genuine Issue Of Material Fact Regarding The Essential Elements Of Trademark Infringement ....................................................... 4

    B.   Redbubble's Affirmative Defense Of Aesthetic Functionality Should Be Rejected ............................................................................................... 6

III.  SUMMARY JUDGMENT SHOULD BE GRANTED IN LTTB'S FAVOR ON ITS CLAIM FOR CONTRIBUTORY INFRINGEMENT AND/OR COUNTERFEITING ............................................................................................ 8

IV.  STATUTORY DAMAGES SHOULD BE IMPOSED ON REDBUBBLE ........................ 10

# TABLE OF AUTHORITIES

## Cases

*1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229 (10th Cir. 2013) .......................................... 8

*AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir. 1979), *abrogated in part by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003) ....................................... 5, 6

*Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426 (S.D.N.Y. 2012) .......................... 11

*H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000 (E.D. Wis. 2018) ................................. 11

*Louis Vuitton S.A. v. Gucci Shops, Inc.*, 875 F.2d 584 (7th Cir. 1989) ........................................... 11

*Microsoft Corp. v. Coppola*, No. C 06-06701-WHA, 2007 WL 1520964, *3 (N.D. Cal. May 24, 2007) ........................................................................................................................ 2, 6

*Milo & Gabby LLC v. Amazon.com, Inc.*, No. C13-1932RSM, 2015 WL 4394673 (W.D. Wash. July 16, 2015) .................................................................................................................. 5

*State of Idaho Potato Com'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708 (9th Cir. 2005) ............................................................................................................................................ 3

*Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010). ............................................................. 8

*Williams-Sonoma, Inc. v. Amazon.com, Inc.*, No. 18-cv-07548-EDL (N.D. Cal. May 2, 2019) ..................................................................................................................................... 1, 5

## Statutes

15 U.S.C.
    § 1114 ......................................................................................................................... 2, 3
    § 1114(1) .................................................................................................................. 2, 3, 6
    § 1116(d)(1) ..................................................................................................................... 2
    § 1117 .............................................................................................................................. 3
    § 1117(c) ......................................................................................................................... 2
    § 1117(c)(1) ................................................................................................................... 11

## Other Authorities

1 J. Thomas McCarthy, Trademarks and Unfair Competition (4th ed. 2011) § 7:82 .............................................................................................................................. 7, 8

## Rules

Fed. R. Evid. 407 ............................................................................................................................... 6

## INTRODUCTION

Redbubble is not Amazon. Redbubble is not eBay. Despite Redbubble's mantra-like invocation of these two companies' names, Redbubble's business operates in fundamentally and materially different ways. Amazon and eBay have thus far escaped liability for selling counterfeit and infringing goods due to specific features of their business models.[1] eBay has said that it cannot tell if Tiffany branded goods offered on its website are counterfeit or not because it cannot inspect the goods. Similarly, Amazon has mostly operated as an agnostic marketplace for the buying and selling of third-party goods—in many cases the products are never in Amazon's possession, custody or control and Amazon has no role in their production or distribution. By contrast, Redbubble sells and offers for sale *only products that it has arranged to offer to third-party users and only products that it has contracted to have manufactured and distributed to purchasers*. The products Redbubble offers are blank canvasses which Redbubble provides to users to adorn with words and images before Redbubble advertises them, offers them for sale, causes them to be manufactured, and then causes them to be distributed. Redbubble knows what words and images are being placed on these products, and it knows what words and images it is displaying on its website, in its URLs, and in its online advertisements. When rightsholders such as LTTB complain to Redbubble, then Redbubble knows if the words and images on its website are infringing or counterfeit, and over time Redbubble has made some effort to police these infringements and counterfeits. Those efforts do not insulate Redbubble from liability for the infringement and counterfeiting that still occurs, and Redbubble cannot hide behind a false invocation of Amazon and eBay.

The undisputed evidence in this case demonstrates that Redbubble has committed trademark counterfeiting and trademark infringement. Redbubble has done so directly and also contributorily. Either way, Redbubble is liable to LTTB. Redbubble should be required to

---

[1] For Amazon, however, this may change. Amazon currently faces a significant challenge by Williams-Sonoma due to Amazon's alleged unauthorized promotion and sale of goods using the WILLIAMS-SONOMA trademark. *Williams-Sonoma, Inc. v. Amazon.com, Inc.*, No. 18-cv-07548-EDL (N.D. Cal. May 2, 2019) [Dkt. 44-4].

remedy this situation with a statutory damages award adequate to compensate LTTB *and* sufficient to deter future infringement by Redbubble.  Redbubble can and should do better than it does to prevent the widespread use of its services to harm rightful trademark owners such as LTTB.

## ARGUMENT

### I. SUMMARY JUDGMENT SHOULD BE GRANTED IN LTTB'S FAVOR ON ITS COUNTERFEITING CLAIM

In its opening memorandum, LTTB argued that the undisputed facts demonstrate that LTTB owns valid trademarks, and that Redbubble has used counterfeit copies of one or more of LTTB's marks in connection with the sale, offering for sale, distribution, or advertising of goods or services.  Opening MPA at 13-18.  LTTB supported these arguments with evidence of LTTB's trademark and service mark registrations, and with evidence of the use of counterfeit copies of the LTTB Mark on goods offered for sale on Redbubble's website and in advertising sponsored by Redbubble.  Declaration of Elektra Printz Gorski [Dkt. 43] ("Gorski Decl") Exs. 1-4 & 7.

In opposition, Redbubble concedes that LTTB owns valid trademarks, but makes two counter-arguments: (1) that LTTB's counterfeiting claim requires the additional element that Redbubble's use of counterfeit copies of the LTTB Mark must be done with intent, and (2) that no "stitch for stich" copy of LTTB's products were sold by Redbubble.  Neither of these counter-arguments precludes summary judgment in favor of LTTB on its counterfeiting claim.

First, as to the argument that counterfeiting under the Lanham Act requires that the plaintiff prove the defendant's intent, the Court should look first to the language of the statute itself.  Fifteen U.S.C. section 1114(1) states, *inter alia*, that anyone using a "counterfeit" of a registered mark shall be liable in a civil action "for the remedies hereinafter provided."  As numerous courts have held, section 1114 provides for a strict liability offense.  *E.g.*, *Microsoft Corp. v. Coppola*, No. C 06-06701-WHA, 2007 WL 1520964, *3 (N.D. Cal. May 24, 2007). Section 1116(d)(1) defines the term "counterfeit mark" but does not include any reference to the intent of the party using the counterfeit mark.  In turn, Section 1117(c) provides the remedies for

counterfeiting, including the recovery of statutory damages, and for a tenfold increase in the maximum statutory damages where the use was willful. Thus, both the statute providing for civil liability for counterfeiting and the statute defining a counterfeit mark do not include the element of intent, and the statute providing for statutory damages provides for *enhanced* damages where intent has been shown—further evidence that Congress did not intend to impose an intent element for trademark counterfeiting.

The only case Redbubble cited for the proposition that trademark counterfeiting requires intent is *State of Idaho Potato Com'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708 (9th Cir. 2005). In *dicta* this case listed intent as an element of counterfeiting, but the issue in the case turned on the question of likelihood of confusion, not intent, and the only authority cited for this element was the McCarthy treatise and its citation to 15 U.S.C. §§ 1114 & 1117. *Id.* at 721. As noted above, these statutes do not require any element of intent for the cause of action for trademark counterfeiting—intent only serves as an element of enhanced damages, not liability in the first place. As stated in LTTB's opening brief, the essential elements of the trademark counterfeiting claim are (1) LTTB's ownership of a valid trademark, and (2) Redbubble's use of one or more counterfeits of LTTB's Marks on or in connection with the "sale, offering for sale, distribution, or advertising of any goods or services. . . ." 15 U.S.C. §1114(1).

Second, Redbubble *has* used and offered for sale "stitch-for-stitch" counterfeit copies of the LTTB Mark. Gorski Decl. ¶¶20, 22 & Exs. 6 & 7; Declaration of Jeffrey E. Faucette [Dkt. 44] ("Faucette Decl.") Ex. 2. It is undisputed that LTTB owns four United States Federal Trademark registrations for the LTTB Mark in various configurations and on various goods and services. In addition to the word mark LETTUCE TURNIP THE BEET, LTTB also owns registrations for the two design marks depicted below:



Gorski Decl. Exs. 2-3. Redbubble has used identical or substantially identical counterfeit copies of LTTB's word and design marks as evidenced by the screenshots and images in Exhibits 6 and 7 to the Gorski Declaration and Exhibit 2 to the Faucette Declaration. Exhibit A to this brief contains one page from Exhibit 7 with additional text describing the counterfeit copies Redbubble has used on a multitude of listings between 2013 and 2019. These listings resulted in over 2,000 counterfeit products being offered for sale on Redbubble.com. Summary judgment should be granted in LTTB's favor on its claim for direct trademark counterfeiting.

## II. SUMMARY JUDGMENT SHOULD BE GRANTED IN LTTB'S FAVOR ON ITS TRADEMARK INFRINGEMENT CLAIM

### A. There Is No Genuine Issue Of Material Fact Regarding The Essential Elements Of Trademark Infringement

In its opening memorandum, LTTB argued that the undisputed evidence shows (1) that LTTB has a protectable ownership interest in the LTTB Mark, and (2) that the Redbubble's use of

the LTTB Mark is likely to cause consumer confusion. Opening MPA at 18-20. In its opposition, Redbubble concedes that LTTB has a protectable ownership interest in the LTTB Mark, and thus LTTB has established this essential element of confusion. Redbubble argues, however, that (1) it cannot be liable for direct infringement because it does not use the LTTB Mark itself, (2) it did not advertise infringing products, and (3) its removal of infringing listings cannot be used to create liability. Redbubble does not address, however, LTTB's argument that the use of the LTTB Mark on Redbubble's website creates a likelihood of confusion under the relevant *Sleekcraft* factors. Opening MPA at 19-20. Thus, Redbubble has also conceded the existence of a likelihood of confusion. In essence, Redbubble's only counter-argument is that it cannot be held directly liable for the uses and advertisements identified by LTTB. This argument is wrong.

First, with respect to the question of direct infringement, Redbubble's repeated invocation of cases involving Amazon and eBay does not bear scrutiny. For example, in *Milo & Gabby LLC v. Amazon.com, Inc.*, No. C13-1932RSM, 2015 WL 4394673 (W.D. Wash. July 16, 2015), the court did *not* find that Amazon could not be liable for direct trademark infringement. Instead, the court considered the merits of the plaintiff's trademark infringement claims but found there was "no evidence of a valid, enforceable mark entitled to protection under the [Lanham] Act" and dismissed the claim on that basis. *Id.* at *12. This holding is irrelevant here since LTTB's rights are undisputed. Redbubble has not cited any other Amazon case finding that Amazon could not be held liable for direct trademark infringement. To the contrary, another judge in this district recently denied a motion to dismiss trademark claims against Amazon that are similar to the claims asserted here by LTTB. *Williams-Sonoma, Inc. v. Amazon.com, Inc.*, No. 18-cv-07548-EDL (N.D. Cal. May 2, 2019) [Dkt. 44-4]. With respect to eBay, the issues are even more distinct since eBay had no ability to inspect the products at issue and determine if they were counterfeit.

Second, Redbubble cannot avoid liability for its advertising of infringing product listings by blaming Google. Redbubble's arguments here echo its constant theme that the infringement and counterfeiting of the LTTB Mark is the fault of everyone but Redbubble. Putting aside Redbubble's lengthy discussion of how Google's ad serving software works, it is undisputed that

"Redbubble purchases ad space on Google and other websites," (Declaration of James Toy in Support of Defendant Redbubble Inc.'s Opposition [Dkt. 47] ("Toy Opp. Decl.") ¶11), and, as a result, the record reflects that *Redbubble's* advertisements containing infringing and/or counterfeit copies of the LTTB Mark were displayed on the internet. Gorski Decl. Ex. 6 at 02, 17, 28 & 41.[2] Section 1114(1) makes Redbubble liable for advertising an infringing copy of the LTTB Mark, and trademark claims under this section are strict liability offenses. *E.g.*, *Microsoft Corp.*, 2007 WL 1520964 at *3. It does not matter if Redbubble knew that Google was going to select these particular product images to include in the Redbubble advertising. Redbubble took that risk when it decided to create this system and purchase ads that would be placed on an automated basis. The details of how the Google ad system works are simply irrelevant to this aspect of LTTB's claim.

Third, Redbubble's citation to Federal Rule of Evidence 407 and its discussion of the impact of its takedown practices misses the point in LTTB's memorandum. As set out in that memorandum, the relevant *Sleekcraft* factors indicate that there is a likelihood of confusion arising from Redbubble's use and advertising of infringing copies of the LTTB Mark. This is not subject to reasonable dispute. LTTB cited Redbubble's responses to LTTB's takedown notices and Redbubble's own proactive policing efforts simply as an indication that it appeared that Redbubble agreed that infringing listings should be removed from its website.

### B. Redbubble's Affirmative Defense Of Aesthetic Functionality Should Be Rejected

Redbubble argued in its motion for summary judgment that LTTB cannot prevail in its trademark infringement claim under the doctrine of aesthetic functionality, and LTTB rebutted this argument in its opening memorandum because the use of the LTTB Mark on the products advertised and sold by Redbubble is source-identifying and nonfunctional. In its opposition and

---

[2] In this regard, LTTB notes that Redbubble's User Agreement contains a provision in which users grant to Redbubble a worldwide, royalty-free license to use and display the content of their listings, thereby indicating that Redbubble intentionally requires its users to give Redbubble the right to use these images in any advertising or promotion Redbubble chooses to purchase. *See* Declaration of James Toy in Support of Redbubble Inc.'s Motion for Summary Judgment [Dkt. 38] ("Toy Decl.") Ex. C at 8-9.



reply, Redbubble tries to turn this issue into one of likelihood of confusion, rather than a defense to infringement. What Redbubble ignores is that there is no aesthetic functionality that requires infringers to make exact copies of both the LTTB word mark and the LTTB design marks:

**LETTUCE TURNIP THE BEET**

**LETTUCE TURNIP THE BEET**

Gorski Decl. Exs. 2-3. Dozens of the products sold by Redbubble bear identical or nearly identical copies of these designs. Gorski Decl. Exs. 6 & 7; Exhibit A. This is infringement, not an ornamental use of a functional design. Redbubble would not argue that aesthetic functionality would permit a t-shirt bearing a copy or near copy of the Nike swoosh logo or some other registered design mark, and it should not be heard now to argue that copying these designs is permissible as ornamentation. Moreover, as Professor McCarthy has stated, "[t]he theory of defensive aesthetic functionality is much too blunt a weapon to serve as a device to solve problems that arise when a trademark is used by defendant in an arguably 'decorative' sense, such as on T-shirts, baseball caps and other paraphernalia. . . . No notions of 'defensive aesthetic functionality'



are proper to serve as an escape from facing head-on the question of likelihood of confusion." 1 J. THOMAS MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 7:82 (4th ed. 2011). The Court should reject application of this theory here.

### III. SUMMARY JUDGMENT SHOULD BE GRANTED IN LTTB'S FAVOR ON ITS CLAIM FOR CONTRIBUTORY INFRINGEMENT AND/OR COUNTERFEITING

In its opening memorandum, LTTB established that Redbubble is liable for contributory infringement and/or counterfeiting because it has control and monitoring of the instrumentality used by a third party to infringe the LTTB Mark. Redbubble's opposition and reply brief argues that it can only be liable if and when LTTB advises it of a specific infringing listing, and that, in any event, its policing efforts have reduced the amount of infringement on its site in recent years. As discussed below, this first argument is wrong, and the second argument does not prevent Redbubble from being liable for the undisputed infringement that *has* occurred despite its policing efforts.

First, Redbubble's opposition quibbles regarding the facts in *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229 (10th Cir. 2013), but fails to deal with the salient issue raised in that case, i.e. in what way can technologic advances change the analysis of contributory infringement cases. The *Tiffany* case grew out of a long line of flea market cases where courts tried to balance where to place liability when a market owner had limited ability to know when and where counterfeit items were being sold within a physical marketplace. In the *Tiffany* case, the marketplace was virtual rather than physical, but eBay faced similar difficulties in terms of identifying which sellers were offering genuine goods versus those offering counterfeit goods. The Tenth Circuit recognized in *1-800 Contacts*, however, that technologic advances could allow a virtual marketplace owner the ability to prevent infringement in the first place without waiting for a takedown notice. Under such circumstances, it would be unwarranted to require the rights holder to prove that marketplace owner knew of a specific offender or offense before imposing contributory liability.

Redbubble is in this situation. For several years, Redbubble has had the ability to know

when a user puts the word mark LETTUCE TURNIP THE BEET into the content fields on the Redbubble site.  Redbubble has known since 2013 that LTTB and its predecessor have the exclusive right to use this mark in connection with the goods sold on www.redbubble.com.  Thus, Redbubble has all of the information and technology it needs to avoid contributing to the ongoing infringement and counterfeiting of the LTTB Mark.  There is no legal or equitable requirement that Redbubble wait to receive a specific takedown notice from LTTB before it is strictly liable for its role in the infringement and counterfeiting of the LTTB Mark.

Second, Redbubble's focus on only a recent sale of infringing products is misplaced.  It is undisputed that between 2013 and 2019 Redbubble has offered for sale on its website 70+ infringing and/or counterfeit listings bearing the LTTB Mark.  Gorski Decl. ¶20 & Ex. 6; Faucette Decl. Ex. 2.  More recently, between January 2017 and the present, LTTB has documented 28 different infringing and/or counterfeit listings by Redbubble.  Gorski Decl. Ex. 6 at 31-75.  Moreover, each of these listings represents the ability to order 60+ infringing products, such that Redbubble has effectively offered *thousands* of infringing products for sale on its website since 2013.  Over many hours of effort, LTTB has painstakingly documented this through hundreds of screen shots and multiple test purchases and has compared Redbubble's counterfeit offerings with the more limited offerings by other on-demand printers.  Gorski Decl. Exs. 6-10.[3]  Before doing

---

[3] With respect to Exhibit 10 to the Gorski Declaration, Redbubble objected to this evidence on the grounds that the photographs and graph included in the exhibit were not produced prior to the close of discovery.  As discussed in the emails between counsel attached to the Declaration of Joshua M. Masur in Support of Defendant Redbubble Inc.'s Opposition to LTTB's Motion for Summary Judgment and Reply in Support of Redbubble's Motion for Summary Judgment [Dkt. 48] ("Masur Decl.") Exs. B & C, LTTB produced prior to the close of discovery documents regarding counterfeiting of the LTTB Mark by other on-demand printers.  Despite Redbubble's arguments, these documents were produced in folders that identified the type of document and the documents were produced in the manner in which they were maintained by LTTB.  Additionally, the manner of production using a Dropbox folder and link provided to counsel is the same manner of production used by LTTB for its other document productions, and Redbubble did not express any prior concerns about this manner of production.  The fact that LTTB made a rolling production of documents is also consistent with how the parties conducted discovery in this case.  LTTB is a small business with only a single individual, Ms. Gorski, available to review documents for production in this case.  Moreover, Redbubble has not stated how it has been prejudiced by LTTB's production on March 1, 2019 nor by the contents of Exhibit 10 to Ms. Gorski's declaration.  The Court should overrule these objections.

so, LTTB tried to obtain information from Redbubble regarding the sales of infringing products. Gorski Decl. Ex. 11. Redbubble brushed off LTTB's effort and refused to provide any information regarding the sales of infringing products. Gorski Decl. Ex. 12. Redbubble stonewalled LTTB's inquiry despite Redbubble's claim that it was Redbubble's policy to provide such information. Faucette Decl. Ex. 1 at 176:16-178:13; 179:11-181:8 & 184:15-187:15. Faced with Redbubble's stonewalling, LTTB had no option but to file this lawsuit to obtain information, and even then, Redbubble did not provide a full list of the moderated listings until the last week of the discovery period—a listing that Redbubble then updated again after the close of discovery. *Compare* Faucette Decl. Ex. 2 (the version produced the last week of discovery) *with* Declaration of Ayaire Cantil-Voorhees in Support of Defendant Redbubble Inc.'s Motion for Summary Judgment [Dkt. 39] ("Cantil-Voorhees Decl.") Ex. A. (adding information regarding products independently discovered by LTTB).

In sum, Redbubble has supplied services to parties that it had reason to know were engaged in trademark infringement and counterfeiting. Redbubble had reason to know this because the users put the LTTB word mark in the content of their listings, and Redbubble has known since 2013 that LTTB and its predecessor have the exclusive right to use this mark on the goods offered by Redbubble. Summary judgment should be entered in LTTB's favor on the claim for contributory infringement and/or counterfeiting.

## IV. STATUTORY DAMAGES SHOULD BE IMPOSED ON REDBUBBLE

In its opening Memorandum, LTTB argued that the Court should impose statutory damages on Redbubble under section 1117(c)(1) in an amount sufficient to compensate LTTB and to deter further counterfeiting by Redbubble. In opposition, Redbubble claims that LTTB has conceded that statutory damages require a showing of willful infringement by Redbubble and that it has not willfully infringed. Redbubble is wrong on both of these points.

First, statutory damages under section 1117(c)(1) do not require proof of willful infringement and LTTB has not somehow conceded that it does. As noted above regarding the

essential elements of counterfeiting, willful conduct provides grounds for *enhanced* statutory damages, but it is not necessary for regular statutory damages. 15 U.S.C. § 1117(c)(1). Additionally, one of several factors that courts consider in assessing the quantity of statutory damages to award is whether the conduct was innocent or willful. *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 437 (S.D.N.Y. 2012). Obviously, if statutory damages were only available for willful conduct then this would be a useless factor to consider.

Second, the record here reflects that Redbubble is at least guilty of willful blindness to the rampant counterfeiting on its website, and this is a factor the Court should consider when assessing the amount of statutory damages to impose on Redbubble. Redbubble knows and has known since 2013 that none of its users not have the right to use the LTTB Mark, and (2) Redbubble has the ability to identify user listings containing the LTTB word mark before those listings are offered for sale on Redbubble's website. This "'willful blindness is knowledge enough'" for the imposition of a significant award of statutory damages. *See H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1039 (E.D. Wis. 2018) (quoting *Louis Vuitton S.A. v. Gucci Shops, Inc.*, 875 F.2d 584, 590 (7th Cir. 1989)).[4]

As far as calculation of statutory damages goes, LTTB's opening Memorandum identified three types of goods sold by Redbubble with counterfeit marks and noted that the Court may award statutory damages of up to $600,000 or up to $6,000,000 if the Court finds Redbubble's actions were willful. LTTB also provided evidence that Redbubble had gross profits in 2018 of more than AU$63,000,000. Faucette Decl. Ex. 5 at 4. Redbubble did not provide any argument in opposition to these points and has thus conceded them. Any assessment of statutory damages should take into account these facts.

In the event the Court does not award statutory damages, LTTB has also sought actual damages in the amount of $200,000 based on evidence submitted by LTTB's owner and predecessor in interest regarding her time combating and documenting Redbubble's rampant

---

[4] Just as in the *SunFrog* case, Redbubble has failed to keep infringing listings off its site even while this case is pending. Gorski Decl. ¶20 & Ex. 6 at 53-75.

counterfeiting and infringement, as well as estimates of the losses LTTB has incurred from Redbubble's offers to sell, advertising, and sales of counterfeit and infringing goods based on both sales that LTTB lost as well as significant declines in LTTB's annual revenues from the sales of goods under the LTTB Mark.  Gorski Decl. ¶¶36-38.  As a small business without the resources of a multi-million dollar multi-national corporation, LTTB has a limited ability to generate sophisticated financial analyses.  Redbubble does not challenge the fact that LTTB's principal spent time documenting Redbubble's infringement and counterfeiting nor the fact that LTTB's evidence demonstrates that LTTB's revenues have declined significantly during the time that Redbubble has engaged in the sale and advertising of counterfeit and infringing products.  Despite Redbubble's arguments, this evidence should provide sufficient basis for the Court or a jury to award actual damages to LTTB if a statutory damage award is not made.

Dated: June 3, 2019            SKAGGS FAUCETTE LLP

                               By:    /s/
                                   Jeffrey E. Faucette
                               Attorneys for Plaintiff LTTB LLC

