UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LTTB LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>REDBUBBLE, INC.,<br><br>    Defendant. | Case No. 18-cv-00509-RS<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

No one suggests puns are copyrightable or patentable. This case presents the question of whether a pun may be protected under trademark principles. The answer is clear: while a source-identifying trademark may embody a pun, no one can claim exclusive rights to use the pun merely by printing it on t-shirts, other "[w]earable garments and clothing," "[p]aper for wrapping and packaging," or "tote bags," or similar products and calling it a "trademark." Even if a trademark embodying a pun is otherwise enforceable where there is a likelihood of source confusion, the trademark holder cannot prevent others from using the pun in contexts that do not imply source.

Plaintiff in this action has registered trademarks for the pun "LETTUCE TURNIP THE BEET." The PTO allowed those registrations, but only after plaintiff proposed including the phrase on product labels and hang tabs—the application was rejected when plaintiff first suggested the phrase merely would be emblazoned across those products. While plaintiff may be entitled to continue to enforce those marks when used in source-identifying manners, it is not entitled to

preclude others from making the joke on t-shirts or elsewhere.

## II. BACKGROUND

Plaintiff in this action is LTTB, LLC ("LTTB"), which describes itself as "a small business that has grown from a single street vendor into a hugely popular online storefront with 10,000 followers and sales of nearly $1 million." Plaintiff contends it has "achieved this success largely due to public fascination with its LETTUCE TURNIP THE BEET trademark and the beautiful and high-quality goods sold under that mark." There is no dispute that LTTB owns four United States federal trademark registrations for the mark LETTUCE TURNIP THE BEET, two of which allegedly have become "incontestable" due to continued use in the statutory period.

Defendant Redbubble, Inc., a company based in Australia, operates what it characterizes as a "global online marketplace" on the internet where independent artists can and do "upload and sell their creative designs on high-quality, everyday products such as apparel, phone cases, stickers, bags, wall art and so on." This action arises from the fact that products featuring the phrase "Lettuce Turnip the Beet" or similar phrases allegedly have been offered for sale on the Redbubble site.

Redbubble seeks summary judgment on grounds that it cannot be held liable for any trademark infringement by third parties, given efforts it insists it has made to respond to any complaints made by LTTB and to remove any allegedly infringing products. Redbubble also argues that, apart from whether or not allegedly infringing products have been offered for sale on its website, LTTB is not entitled to preclude others from using the "LETTUCE TURNIP THE BEET" pun, absent evidence of source confusion.

Although there might otherwise be triable issues of fact as to whether Redbubble could be liable for the marketing of allegedly infringing products on its website, it is entitled to summary judgment because LTTB is not entitled to pre-empt use of the pun under the guise of trademark law. Further factual background is set out in the discussion below, where material.

III.  LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323 (citations and internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which he bears the burden of proof at trial. *Id*. at 322-23. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties.

To preclude the entry of summary judgment, the non-moving party must bring forth material facts, *i.e*., "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 588 (1986). The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine*, Inc., 501 U.S. 496 (1991) (citing Anderson, 477 U.S. at 255); *Matsushita*, 475 U.S. at 588 (1986). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th

Cir. 1987). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

## IV. DISCUSSION

A trademark is defined in 15 U.S.C. § 1127 as including "any word, name, symbol, or device or any combination thereof" used by any person "to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). To be registered, a mark must be capable of distinguishing the applicant's goods from those of others. *Id.*

In this action plaintiff LTTB's founder, owner, and predecessor-in-interest, is Elektra Printz Gorski, who graduated from the Fashion Institute of Technology ("FIT") in New York in 2007, winning the famed Critic's Award as "one of the most promising designers in her class." Gorski has taken advanced silkscreen classes at FIT and the School of Visual Art and is alleged to be a designer and artist widely considered a master printer among her industry peers. In 2011, Gorski allegedly created the LETTUCE TURNIP THE BEET trademark and her first apparel and product designs using the mark as "both a source identifier and as a graphic design element." Plaintiff's initial attempt to register the claimed trademark, however, resulted in the following response from the PTO:

> Registration is refused because the applied-for mark, as used on the specimen of record, is merely a decorative or ornamental feature of the goods; it does not function as a trademark to identify and distinguish applicant's goods from those of others and to indicate the source of applicant's goods . . . .
>
> Here, the applied-for mark, "LETTUCE TURNIP THE BEET", as shown on the specimen, is merely ornamental because the mark

> appears in a large font across the center of the packing box, tote bag, and shirts, where ornamental elements may appear on such goods. The consumer is likely to assume from this type of usage that the mark is merely a decorative feature of the items and does not indicate the source of each item from those of others.

(Dkt 37-2, p. 3).

LTTB obtained registration of the various forms of the "LETTUCE TURNIP THE BEET" marks only after submitting specimens in which the phrase appeared on product labels or "hang tags," as opposed to being displayed boldly across the face of the various products. The issue, among others, presented in these motions, is whether LTTB has a viable infringement claim where the accused products merely display the pun, and do not otherwise include any indication that they are produced, or licensed by, LTTB.[1]

Redbubble's defense on this point may be characterized as either implicating the rule that "decorative or ornamental" features are not subject to trademark protection or the exclusion for "aesthetic functionality." Case law has not always clearly distinguished between the two concepts, which undoubtedly are related and overlap. For purposes of this motion, however, the precise nomenclature is not critical. The issue is, as noted above, whether LTTB may rely on trademark law to obtain an exclusive right to sell products such as "apparel, phone cases, stickers, bags, wall art and so on" displaying the pun. The answer is no.

"The doctrine of aesthetic functionality has a somewhat checkered history." *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1064 (9th Cir. 2006). The *Au-Tomotive* court explained:

> The doctrine of aesthetic functionality is often traced to a comment in the 1938 Restatement of Torts:

---

[1] Redbubble is correct that the PTO's initial rejection of the application based on the submitted specimens does not mean that the subsequently issued registration is thereby more limited in scope than it otherwise would have been. The registered trademarks may be enforced to the same extent as any other registered marks, under all applicable legal principles. The initial rejection is relevant, however, because it supports the conclusion that, when merely emblazoned across a t-shirt or a tote bag or similar item, the pun is not source-identifying and therefore not infringing.

> When goods are bought largely for their aesthetic value, their features may be functional because they definitely contribute to that value and thus aid the performance of an object for which the goods are intended.

457 F.3d at 1068.

The *Au-Tomotive* court observed, however, that in *Vuitton et Fils S.A. v. J. Young Enters., Inc.*, 644 F.2d 769 (9th Cir. 1981) the Circuit "emphatically" rejected "the notion that any feature of a product which contributes to the consumer appeal and saleability of the product is, as a matter of law, a functional element of that product" . . . Indeed, a trademark which identifies the source of goods and incidentally services another function may still be entitled to protection.") *Id.* at 775 (quoting *Vuitton*, internal quotations and citations omitted). Thus, under *Vuitton*, the mere fact that the mark is the "benefit that the consumer wishes to purchase" will not override trademark protection *if* the mark is source-identifying. That said, however, the *Au-Tomotive* court made clear that in *Vuitton,* "aesthetic functionality was dealt a limiting but not fatal blow." 457 F.3d at 1069.

The present case presents circumstances undeniably calling for application of the aesthetic functionality doctrine. There is *no* evidence in the record from which a reasonable trier of fact could conclude that consumers seek to purchase products based on LTTB's reputation—whether "genuine" LTTB products or those produced by any competitors. Rather, as LTTB's evidence and argument make clear, consumers are interested in purchasing products displaying the pun.

LTTB argues Redbubble cannot contend "aesthetic functionality would permit a t-shirt bearing a copy or near copy of the Nike swoosh logo or some other registered design mark," and therefore it "should not be heard now to argue that copying these designs is permissible as ornamentation." At first blush, that argument appears consistent with the ultimate holding in *Au-Tomotive*, which rejected a claim that the defendants necessarily had a right to use Volkswagen and Audi logos on the products they were selling. The distinction, however, is manifest. Nike, Volkswagen, and Audi all developed their trademark rights by selling goods under those brand names, and have at least arguably gained brand loyalty for those products, as opposed to mere consumer interest in the specific names, independent of the reputation the companies developed when selling the products.

Redbubble properly invokes *International Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912 (9th Cir. 1980) to support its argument that LTTB's registration of the marks does not preclude it from marketing products displaying the pun. In *Job's Daughters*, the defendant marketed jewelry with the "Job's daughter's" trademark, which belonged to a young women's fraternal organization." 633 F.2d at 914. The court observed:

> It is not uncommon for a name or emblem that serves in one context as a collective mark or trademark also to be merchandised for its own intrinsic utility to consumers. We commonly identify ourselves by displaying emblems expressing allegiances. Our jewelry, clothing, and cars are emblazoned with inscriptions showing the organizations we belong to, the schools we attend, the landmarks we have visited, the sports teams we support, the beverages we imbibe. Although these inscriptions frequently include names and emblems that are also used as collective marks or trademarks, it would be naive to conclude that the name or emblem is desired because consumers believe that the product somehow originated with or was sponsored by the organization the name or emblem signifies.

*Id.* at 918.

The court held the plaintiff had failed to show "a typical buyer of [the defendant's] merchandise would think that the jewelry was produced, sponsored, or endorsed by the [plaintiff] organization. *Id.* at 920. Although *Job's Daughters* was decided after trial, it is highly instructive here. If anything, the primary distinction between *Job's Daughters* and the circumstances here cuts *against* LTTB because it cannot plausibly allege there is any organization to which consumers might wish to express "allegiance" by purchasing products displaying the pun.

LTTB is attempting to sell the pun it claims as a trademark. The products are simply the vehicle for distributing the claimed "trademark," rather than the other way around, where a trademark is used to identify the source of the goods. While companies that have already established s famous mark for selling a product—for instance Coca-Cola, Volkswagon, Audi, or Nike—may thereafter be able also to exploit consumer interest in the mark by selling t-shirts or other products emblazoned with such marks, and preclude others from doing so—that simply does not present an equivalent issue.

Redbubble does not suggest that LTTB's registered trademarks are *per se* invalid, and nothing in this order should be construed as so holding. Redbubble instead appropriately frames the argument as precluding LTTB from showing a likelihood of confusion as to source, where the mere use of the pun on the face of various products cannot be source-identifying. LTTB obtained its registration by submitting samples showing the claimed brand name being used on labels and hangtags. Were some competitor to use a brand name in similar fashion that created a likelihood of confusion, liability might follow. LTTB may not, however, recover for alleged trademark infringement based on any competitors' use of the very kind of designs that the PTO found not to be eligible for trademark protection. As explained in *Job's Daughters:*

> Our holding does not mean that a name or emblem could not serve simultaneously as a functional component of a product and a trademark . . . . That is, even if the Job's Daughters' name and emblem, when inscribed on Lindeburg's jewelry, served primarily a functional purpose, it is possible that they could serve secondarily as trademarks if the typical customer not only purchased the jewelry for its intrinsic functional use and aesthetic appeal but also inferred from the insignia that the jewelry was produced, sponsored, or endorsed by Job's Daughters

633 F.2d at 919.

In this case, however, LTTB has presented no evidence sufficient to create a triable issue of fact that any purchaser of allegedly infringing items inferred from use of the pun that the product was produced, sponsored, or endorsed by any particular person or entity, such as LTTB. Still, nothing in this ruling precludes LTTB from enforcing its rights against a defendant who markets a products misleadingly suggesting LTTB is the source.

Finally, the fact that two of LTTB's marks are now "incontestable" under the statutory scheme does not call for a different result. First, as noted above, nothing in this order concludes LTTB has no viable trademarks; rather, LTTB merely cannot preclude others from displaying the pun on products, absent a showing of source-confusion. Second, even if the validity of the marks were at issue, statutory "incontestability" does not preclude challenges based on arguments that the marks are "functional," 15 U.S.C.A. § 1115 (b)(8), and there has been no argument or showing

that the statutory exception does not apply where the contention is the claimed mark is aesthetically functional.

In light of the conclusions of this order, the parties' disputes as to whether Redbubble could be held liable for sales through its site of allegedly infringing products need not be reached. Redbubble's motion for summary judgment will be granted.

## V.  CONCLUSION

Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted. A separate judgment will issue.

**IT IS SO ORDERED**.

Dated: July 12, 2019

_____
RICHARD SEEBORG
United States District Judge