1   Kenneth B. Wilson (SBN 130009)
    COASTSIDE LEGAL
2   455 1st Avenue
    Half Moon Bay, California 94019
3   Telephone:  (650) 440-4211
        ken@coastsidelegal.com
4
5   Joshua M. Masur  (SBN 203510)
    ZUBER LAWLER & DEL DUCA LLP
6   2000 Broadway Street, Suite 154
    Redwood City, California 94063
7   Telephone: (650) 434-8538
    Facsimile:  (213) 596-5621
8       jmasur@zuberlaw.com
9
    Attorneys for Defendant
10  REDBUBBLE INC.
11
                    UNITED STATES DISTRICT COURT
12
            FOR THE NORTHERN DISTRICT OF CALIFORNIA
13
                      SAN FRANCISCO DIVISION
14

| | |
|---|---|
| 15 LTTB LLC, a California limited liability company,<br><br>16<br><br>17                    Plaintiff,<br><br>18        v.<br><br>19 REDBUBBLE INC.,<br><br>20<br>                    Defendant.<br><br>21 | Case No. 3:18-cv-00509-RS<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT REDBUBBLE INC. FOR ATTORNEYS' FEES; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Filed concurrently with Declarations and [Proposed] Order]** |

22                                      Judge:    Hon. Richard Seeborg
                                        Date:     October 10, 2019
23                                      Time:     1:30 p.m.
                                        Crtrm.:   3
24
25
26
27
28

**TO PLAINTIFF LTTB LLC AND ITS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 10, 2019, at 1:30 p.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Richard Seeborg, located in the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Redbubble Inc. ("Redbubble") will and hereby does move this Court pursuant to Federal Rule of Civil Procedure 54 and 15 U.S.C. § 1117(a) for an Order awarding Redbubble the sum of $237,797 as the reasonable attorneys' fees that Redbubble incurred in defending this action. The Motion is made on the grounds that this is an exceptional case and the fees requested by Redbubble are reasonable under the circumstances. This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the supporting Declarations of Kenneth B. Wilson and Joshua M. Masur, filed concurrently herewith, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

Dated:  August 16, 2019

COASTSIDE LEGAL
KENNETH B. WILSON

ZUBER LAWLER & DEL DUCA LLP
JOSHUA M. MASUR

By:   _/s/ Kenneth B. Wilson_
     KENNETH B. WILSON

Attorneys for Defendant
REDBUBBLE INC.

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I.      INTRODUCTION................................................................................................................1

II.     STATEMENT OF FACTS...................................................................................................2

        A.      Plaintiff's Unreasonable Pre-Litigation Conduct Towards Redbubble.....................2

        B.      Procedural History.....................................................................................................4

        C.      Redbubble's Reasonable Attorneys' Fees.................................................................6

III.    ARGUMENT .....................................................................................................................8

        A.      Redbubble Is Entitled to Recover Its Reasonable Attorneys' Fees...........................8

                1.      LTTB's Claims Were Exceptionally Weak on the Merits. ...........................9

        B.      Redbubble's Requested Fees Are Reasonable. .......................................................10

IV.     CONCLUSION .................................................................................................................12

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amusement Art, LLC, v. Life is Beautiful, LLC*,
No. 214CV08290DDPJPR, 2017 WL2259672 (C.D. Cal. May 23, 2017)................. 8, 9, 10

*Barjon v. Dalton*,
132 F.3d 496 (9th Cir. 1997)......................................................................................... 10

*Cairns v. Franklin Mint Co.*,
292 F.3d 1139 (9th Cir. 2002).......................................................................................... 8

*Cotton v. City of Eureka*,
889 F.Supp.2d 1154 (N.D. Cal. 2012) .......................................................................... 10

*Dropbox, Inc. v. Thru Inc.*,
No. 15-CV-01741-EMC, 2017 WL 914273 (N.D. Cal., Mar. 8, 2017) ........................... 10

*Ets–Hokin v. Skyy Spirits, Inc.*,
225 F.3d 1068 (9th Cir. 2000).......................................................................................... 2

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994) ........................................................................................................ 8

*Gorski v. The Gymboree Corp.*,
No. 14-CV-01314-LHK, 2014 WL 3533324 (N.D. Cal., July 16, 2014) ........................... 2

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ...................................................................................................... 10

*Intel Corp. v. Terabyte Int'l, Inc.*,
6 F.3d 614 (9th Cir. 1993)............................................................................................. 10

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
134 S. Ct. 1749 (2014) ................................................................................................. 1, 8

*Renna v. Cty. of Union, N.J.*,
No. 2:11-3328 KM MAH, 2015 WL 1815498 (D.N.J. Apr. 21, 2015) ............................... 9

*Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*,
No. 3:15-CV-04618-WHO, 2017 WL 6059271 (N.D. Cal. Dec. 7, 2017) ................. 1, 8, 11

*Secalt S.A. v. Wuxi Shenxi Const. Mach. Co.*,
668 F.3d 677 (9th Cir. 2012)........................................................................................... 7

*Stonebrae, L.P. v. Toll Bros.*,
No. C-08-0221-EMC, 2011 WL 1334444 (N.D. Cal. Apr. 7, 2011) ........................... 2, 10

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
839 F.3d 1179 (9th Cir. 2016).................................................................................... 1, 8

*Technology Properties Limited LLC v. Canon Inc.*,
    No. C 14-3640 CW, 2017 WL 2537286 (N.D. Cal., Jan. 26, 2017) ..................................... 8

*The Ohio State University v. Redbubble, Inc.*,
    369 F.Supp.3d 840 (S.D. Ohio 2019) ...................................................................................... 3

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990) ........................................................................................ 10, 11

**FEDERAL CASES**

15 U.S.C. § 1117(a) ....................................................................................................................... 1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

The Lanham Act provides for the recovery of fees by the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). The standard for recovering such fees has been relaxed over the past few years. *Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*, No. 3:15-CV-04618-WHO, 2017 WL 6059271 (N.D. Cal. Dec. 7, 2017). Now, a Lanham Act case will be considered "exceptional" for purposes of a fee award if it "stands out from the others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014) (internal quotations omitted)). There is no "'precise rule or formula for making these determinations.'" *SunEarth*, 839 F.3d at 1180-81 (quoting *Octane Fitness*). Rather, "district courts analyzing a request for fees under the Lanham Act should examine the 'totality of the circumstances to determine if the case was exceptional.'" *SunEarth*, 839 F.3d at 1181 (quoting *Octane Fitness*).

Here, the case qualifies as "exceptional" under both the "strength" and "manner" aspects of this test. With respect to the strength of LTTB's litigating position, this Court's July 12, 2019 Order granting Redbubble's Motion for Summary Judgment (the "Summary Judgment Order") expressly notes that there is "***no evidence*** in the record from which a reasonable trier of fact could conclude that consumers seek to purchase products based on LTTB's reputation." [Dkt. No. 53 at 6 (emphasis added).] LTTB's decision to initiate and pursue a case without this most basic of evidence makes this case "one that stands out from the others with respect to the substantive strength of a party's litigating position." Moreover, although there was only a single $28 sale on which LTTB could conceivably recover damages, LTTB still insisted that it was entitled to statutory damages of $6,000,000. Accordingly, this case stands out, and an award of fees is warranted.

Redbubble seeks to recover $237,797 in attorneys' fees it actually incurred. During the parties' meet and confer, LTTB agreed that the hourly rates charged by Redbubble's' attorneys are

reasonable.  [Dkt. No. 67 (Masur Dec.), ¶ 13, Exh. C.]  LTTB has disagreed, however, that the amount of fees incurred at those hourly rates is "reasonable," asserting that Redbubble's outside counsel spent more than twice as many hours in connection with the case than its own.  [*Id.*] However, LTTB ignores that Redbubble's expenditures were but a fraction of the damages LTTB claimed, and that when the litigation support activities performed by LTTB's principal are considered, Redbubble spent far less time defending this case than LTTB spent pursuing it.  In any event, no genuine argument can be made that Redbubble's fees are "unreasonable."  Redbubble staffed this matter leanly – just two attorneys handled the vast majority of the case.  And all the fees claimed by Redbubble in this Motion have in fact been paid by Redbubble, and are therefore presumptively reasonable.  *See Stonebrae, L.P. v. Toll Bros*., No. C-08-0221-EMC, 2011 WL 1334444, at \*6 (N.D. Cal. Apr. 7, 2011) (that a sophisticated party paid the fees "adds weight to the presumption of reasonableness").  Accordingly, Redbubble respectfully submits that the full amount of fees requested in this motion should be awarded.

## II.      STATEMENT OF FACTS

### A.      Plaintiff's Unreasonable Pre-Litigation Conduct Towards Redbubble.[1]

Much like the Amazon Marketplace and eBay, Redbubble is a global online marketplace platform, hosted at redbubble.com (the "Redbubble Marketplace").  [Dkt. No. 38-1 (Toy Decl. Exh. A).]  Through the Redbubble Marketplace, independent artists are able to profit from their creativity by selling their products to a new universe of fans, who in turn benefit by being able to

---

[1] This is not the first time that LTTB or its principal and predecessor-in-interest, Ms. Gorski, have pressed claims that defied legal rationale. LTTB admitted during discovery that it has aggressively enforced its trademarks, both informally and through litigation, against various retailers and platforms, asserting that products similar to those at issue here violate her rights (although LTTB refused to disclose the terms under which any of these disputes were resolved). However, in the only previous published opinion that Redbubble could find that addresses LTTB's rights, Judge Koh dismissed a claim that Gymboree's use of the phrase Lettuce Turnip the Beet across the front of a T-shirt infringed LTTB's copyrights, citing to well-established Ninth Circuit case law holding that "[s]hort phrases or expressions cannot be copyrighted, even if they are distinctively arranged or printed." *Gorski v. The Gymboree Corp.*, No. 14-CV-01314-LHK, 2014 WL 3533324, at \*5 (N.D. Cal., July 16, 2014) (quoting *Ets–Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1081 n.14 (9th Cir. 2000)).

purchase products that provide them with "[a] simple but meaningful way to show the world who they are and what they care about." [*Id.*] This transaction process is entirely Seller-directed and automated by the Redbubble Marketplace software. [Dkt. No. 41 (Luthra Decl.) ¶ 4.] Put simply, no Redbubble personnel designed or uploaded, manufactured, offered for sale, sold, handled, distributed, or for that matter even viewed any of the Accused Products prior to their sale. [Dkt. No. 40 (Deshais Decl.) ¶ 11.] Indeed, least one court has ruled as a matter of law that this business model precludes a claim against Redbubble for direct trademark infringement or counterfeiting. *The Ohio State University v. Redbubble, Inc.*, 369 F.Supp.3d 840 (S.D. Ohio 2019).

LTTB claims ownership of four federally registered trademarks for the phrase "Lettuce Turnip the Beet." The Trademark Office initially refused to issue a registration based a specimen that had the phrase stamped across the middle of the shirt, pointing out that when used in this fashion, the phrase was "merely a decorative or ornamental feature of the goods," and thus "[t]he consumer is likely to assume from this type of usage that the mark is merely a decorative feature of the items and does not indicate the source of each item from those of others." [Dkt. No. 37-2 (Wilson Decl., Exh. B).] Gorksi did not dispute this determination, but instead submitted a response to the Office Action with new specimens, including a substitute T-shirt specimen showing the phrase on a garment label attached to the back of the shirt and on a hang tag. [Dkt. No. 37-3 (Wilson Decl., Exh. C).] Only after receiving this response and substitute specimens did the Trademark Office agree to issue the registration.

In May 2013, nearly five years before filing suit, LTTB's principal Elektra Gorski[2] sent Redbubble an email complaining that a t-shirt with the phrase "Let Us Turn Up the Beat" emblazoned across the front infringed her "Lettuce Turnip the Beet" trademark. [Dkt. No. 38-5 (Toy Decl. Exh. E).] Over the next five years, LTTB sent several takedown demands, many of which involved shirt designs with the phrase "Lettuce Turnip the Beet" stamped across the center of the shirts, and which appeared virtually identical to the LTTB design that the Trademark Office

---

[2] LTTB and Gorski will hereinafter collectively be referred to as "LTTB."

deemed a non-trademark ornamental use.  [*Id.*]  Some of these demands were quite aggressive and threatening, and many related to designs that were not even arguably infringing (*e.g.*, a t-shirt with the phrase "Olive a Sweet Beet Lettuce Party").  LTTB demanded that Redbubble remove all products containing the allegedly confusing mark, including product types for which LTTB had no trademark protection.  [*See, e.g.*, Dkt. No. 38-9 (Toy Decl., Exh. I (October 26, 2014 letter)).]  LTTB demanded that Redbubble place a "permanent block" on its users' ability to use the phrase Lettuce Turnip the Beet, as a search term or otherwise.  [*Id.*]  And she insisted that Redbubble "police every single new product listed using the word LETTUCE, TURNIP or BEET, in the title or metatags"; as of the time Redbubble filed its motion for summary judgment, there were nearly 10,000 such listings, none of which are accused of infringing LTTB's marks.  [*Id.*]

In response to LTTB's correspondence, Redbubble promptly and consistently removed the allegedly infringing listings in accordance with its IP/Publicity Rights Policy.  In addition, after receiving the first few letters, in 2014, Redbubble began proactively screening for third-party uploads of listings containing the Lettuce Turnip the Beet mark.  [Dkt. No. 38 (Toy Decl.) ¶ 30.]  These efforts have been extremely successful.  Indeed, since January 23, 2014 (*i.e.,* from the earliest start of the statute of limitations period indisputably applicable to this case) ***only a single product*** bearing the phrase "Lettuce Turnip the Beet" has been sold through the Redbubble Marketplace to a purchaser other than LTTB's principal or persons acting on her behalf: a t-shirt that sold in February 2015 for roughly 28 U.S. dollars, netting Redbubble a service fee of ***less than $11 USD***.  LTTB was aware of this fact well before the parties' summary judgment motions were filed, yet continued to press forward with this case, arguing that this single sale has "been nearly fatal to LTTB's business" and entitled LTTB to a windfall of hundreds of thousands of dollars in actual damages from Redbubble and millions of dollars in statutory damages..

## B.   Procedural History

On January 23, 2018, more than seven months after the last correspondence and nearly five years after Gorski's first complaint to Redbubble, LTTB filed the Complaint in this action.  The Complaint asserted claims under the Lanham Act for trademark counterfeiting, direct trademark infringement, unfair competition and passing off, and contributory trademark infringement.

DEFENDANT REDBUBBLE INC.'S MOTION FOR ATTORNEYS' FEES

1      Over the following 16 months, Redbubble attempted to litigate the case as efficiently as

2 possible, engaging in limited written discovery, and taking just a single day of deposition.

3 However, there were certain additional tasks that could not be avoided, including responding to

4 LTTB's 122 written discovery requests, defending Redbubble's corporate deposition, and

5 engaging in a court-ordered mediation, among other things.

6      As the litigation progressed, Redbubble learned that LTTB lacked any evidence that any

7 consumer had actually been confused by any listing on the Redbubble marketplace; that LTTB and

8 its counsel continued to insist – notwithstanding its loss in *Gymboree* – that any use of even a

9 portion of the four-word phrase "lettuce turnip the beet" infringed its rights; that LTTB had no

10 actual evidence that it had suffered any injury; and that LTTB had not even retained any expert to

11 attempt to fill these obvious holes in its *prima facie* infringement and damages case.  Indeed, at

12 LTTB's 30(b)(6) deposition, its principal expressly admitted that "nobody associates the brand

13 with [LTTB] LLC," before attempting to soften that testimony to a confirmation that it could not

14 identify "any evidence that consumers or purchasers associate" the phrase or mark "Lettuce

15 Turnip the Beet" with LTTB.  [Dkt. No. 37-4 (Wilson Decl. Exh. D (LTTB Depo.)) at 82:15-21;

16 *see generally id.* at 78-83).]  Accordingly, Redbubble repeatedly attempted to persuade LTTB to

17 stop pursuing the case and wasting both parties time and money, but to no avail.

18      Unable to persuade LTTB to withdraw its claims, on April 29, 2019 Redbubble filed its

19 motion for summary judgment, arguing that: 1) Redbubble cannot be liable for trademark

20 infringement for transactions conducted via the Redbubble marketplace because Redbubble does

21 not make, sell or otherwise use the allegedly infringed marks and promptly removes allegedly

22 infringing content from the marketplace upon receiving notice thereof; 2) the statute of limitations

23 bars the vast majority of LTTB's claims; 3) under the doctrine of aesthetic functionality, LTTB

24 cannot show that any of the accused products violate its trademark rights because the allegedly

25 infringing uses are merely ornamental; and 4) LTTB does not have evidence to support its

26 damages claims.

27      In its response, LTTB did not counter Redbubble's statute of limitations argument, and

28 indeed did not dispute that the total amount of potentially infringing sales that LTTB might

1   recover for is less than $30.  LTTB challenged Redbubble's statements regarding the applicable

2   law, but never identified any disputed material facts, while LTTB effectively conceding the

3   absence of factual disputes in its own cross-motion.  Of particular relevance for purposes of this

4   motion, LTTB's Opposition failed to rebut that LTTB had "conceded that consumers do not

5   associate the phrase "Lettuce Turnip the Beet" with plaintiff; that consumers purchase products

6   with the 'Lettuce Turnip the Beet' phrase because they like the message, not because it identifies

7   the source as plaintiff LTTB; and that there is no evidence that anyone was confused as to the

8   source of the accused products." [Dkt. No. 46 (Redbubble SJ Reply), at 16 (citing Dkt. No. 37

9   (Wilson Decl.) Exh. D (LTTB Depo.) at 50-55, 78-83, 262-63).]

10          On July 12, 2019, this Court granted summary judgment to Redbubble based on its

11   aesthetic functionality defense, without ruling on Redbubble's other arguments.  In doing so, the

12   Court noted that "no one can claim exclusive rights to use the pun merely by printing it on . . .

13   products and calling it a 'trademark.'  Even if a trademark embodying a pun is otherwise

14   enforceable where there is a likelihood of source confusion, the trademark holder cannot prevent

15   others from using the pun in contexts that do not imply source." [Dkt. No. 53 at 1.]  In this case,

16   the Court observed that "the accused products merely display the pun, and do not otherwise

17   include any indication that they are produced, or licensed by, LTTB." [*Id.* at 5.]  And the Court

18   expressly found that "There is *no* evidence in the record from which a reasonable trier of fact

19   could conclude that consumers seek to purchase products based on LTTB's reputation—whether

20   "genuine" LTTB products or those produced by any competitors." [*Id.* at 6 (emphasis in

21   original).]  Accordingly, the Court granted summary judgment in favor of Redbubble, holding that

22   "LTTB has presented no evidence sufficient to create a triable issue of fact that any purchaser of

23   allegedly infringing items inferred from use of the pun that the product was produced, sponsored,

24   or endorsed by any particular person or entity, such as LTTB." [*Id.* at 8.]

25          **C.**      **Redbubble's Reasonable Attorneys' Fees**

26          Upon receiving notice that LTTB had filed this matter, Redbubble retained the services of

27   Coastside Legal, a one-person law firm founded by Kenneth B. Wilson that had represented

28   Redbubble in connection with intellectual property issues since 2012.  When the litigation became

more active and began to require the use of non-lawyer professionals such as paralegals and legal assistance, Redbubble also retained Joshua Masur, initially with the firm of Turner Boyd LLP, and subsequently with Zuber Lawler & Del Duca LLP, to work alongside Coastside Legal.  While multiple firms were used, as reflected in the invoices provided herewith and summarized below, the case was efficiently and appropriately staffed. Indeed, only two lawyers billed significant time to this case.

The billings of Redbubble's attorneys are summarized as follows, as substantiated by the referenced documents attached as Exhibits to the Declarations and provided herewith:

| Attorney or Staff | Firm | Hours | Rate[3] | Total |
|---|---|---|---|---|
| Kenneth Wilson | Coastside Legal | 289.6 | $495 | $143,352 |
| Joshua Masur | Turner Boyd; Zuber Lawler | 152.6 | $600 | $91,560 |
| Elizabeth Powers[4] | Turner Boyd | 2.8 | $525 | $1,470 |
| Jacob Zweig[5] | Turner Boyd | 1.0 | $355 | $355 |
| Jennifer Newman[6] | Turner Boyd | 5.3 | $200 | $1,060 |
| Total | | 451.3 | | $237,797 |

The fees sought through this motion were fully paid by Redbubble, or are the process of being paid on a timely basis in accordance with the law firms' standard billing and payment practices.[7]

---

[3] LTTB does not dispute that Redbubble's counsel's rates are reasonable.  [Dkt. No. 67 (Masur Decl.), Exh. C.]

[4] Elizabeth Powers is a trademark attorney with over 25 years of experience, who was of counsel to Turner Boyd at the time.  [Dkt. No. 67 (Masur Decl.), ¶ 9.]

[5] Jacob Zweig is a sixth-year associate and former 11th Circuit clerk. [Id.]

[6] Jennifer Newman is a highly experienced paralegal. [Id.]

[7] Although "attorney's fees under the Lanham Act may also include reasonable costs that the party cannot recover as the 'prevailing party,'" such as those for electronic discovery services, for the sake of reasonableness and simplicity, Redbubble has limited this motion to its fees.  *Secalt S.A. v. Wuxi Shenxi Const. Mach. Co.*, 668 F.3d 677, 690 (9th Cir. 2012), *abrogated in part on other grounds by SunEarth*, 839 F.3d 1179 (9th Cir. 2016).

III.     **ARGUMENT**

    A.     <u>**Redbubble Is Entitled to Recover Its Reasonable Attorneys' Fees**</u>

As explained by the Ninth Circuit in *SunEarth*, "district courts analyzing a request for fees under the Lanham Act should examine the 'totality of the circumstances' to determine if the case was exceptional, exercising equitable discretion in light of the nonexclusive factors identified in *Octane Fitness* and *Fogerty* [*v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)], and using a preponderance of the evidence standard."  *SunEarth*, 839 F.3d at 1181 (internal citation omitted). The nonexclusive factors to which the Court was referring include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id*. (internal citations and quotations omitted).

Even before *SunEart*h, a prevailing party was not required to establish bad faith or frivolousness; it was enough to show unreasonableness or an objective lack of merit.  *See, e.g., Cairns v. Franklin Mint Co*., 292 F.3d 1139, 1156 (9th Cir. 2002) (fees award affirmed due to insufficient "legal basis" for the plaintiff's claims).  After *Octane Fitness* and *SunEarth*, however, it is sufficient for a prevailing defendant to show that the plaintiff's claims had exceptionally low merit.  Although it is not the case that "*any* trademark case in which a plaintiff's claims are dismissed on a Rule 12 or summary judgment motion," is exceptional *per se*, "trademark cases dismissed on summary judgment *are* exceptions to the rule."  *Sazerac*, 2017 WL 6059271, at *3, n. 4 (emphasis in original); *see also Amusement Art, LLC, v. Life is Beautiful, LLC*, No. 214CV08290DDPJPR, 2017 WL2259672 at *4 (C.D. Cal. May 23, 2017) (fees awarded after findings that the plaintiff's claims were "exceptionally weak" and supported by "almost no evidence"), *aff'd*, 768 F. App'x 683, 687 (9th Cir. 2019) (because certain of plaintiff's claims were "extraordinarily [or] extremely weak,… the district court did not abuse its discretion in finding the Lanham Act claims exceptional and awarding fees to" defendant); *Technology Properties Limited LLC v. Canon Inc*., No. C 14-3640 CW, 2017 WL 2537286, at *2 (N.D. Cal., Jan. 26, 2017) (awarding fees to a prevailing defendant in the analogous patent infringement context where "[t]he merits of Plaintiffs' lawsuit were exceptionally weak"); *Renna v. Cty. of Union, N.J*., No. 2:11-

3328 KM MAH, 2015 WL 1815498, at *3 (D.N.J. Apr. 21, 2015) ("[A] party can[not] avoid attorneys' fees because its argument has a sliver of merit. A case that is of exceptionally little merit may expose a party to an award of attorneys' fees.").

Applying these standards, LTTB's lawsuit qualifies as an exceptional case.

### 1.  **LTTB's Claims Were Exceptionally Weak on the Merits.**

As noted above, LTTB pursued this case through summary judgment despite a lack of evidence regarding numerous required components of its claims.  Specifically, LTTB had no evidence that anyone associated the "Lettuce Turnip the Beet" phrase with LTTB or considered it to be a designation of origin.  [Dkt. No. 37-4 (Wilson Decl., Exh. D (LTTB Depo.)) at 78-83.]  As the court found in its summary judgment order, "[t]here is no evidence in the record from which a reasonable trier of fact could conclude that consumers seek to purchase products based on LTTB's reputation."  LTTB also had no evidence that there was any actual confusion. And the court further observed that "LTTB has presented no evidence sufficient to create a triable issue of fact that any purchaser of allegedly infringing items inferred from use of the pun that the product was produced, sponsored, or endorsed by any particular person or entity, such as LTTB."

While Redbubble recognizes that a finding that a case is "exceptional" or "stands out" from others in its lack of merit is highly case specific, courts have found cases to be exceptional based on similar and even weaker showings of exceptionality to what Redbubble has presented here.  For example, in *Amusement Art*, the district court unsurprisingly found claims based on fraudulently procured trademarks to be exceptional, but was separately faced with the question of whether a claim based on an unrelated mark that the court dismissed on summary judgment should also be deemed exceptional.  The court answered this question in the affirmative, noting that plaintiff's claim was exceptionally weak because plaintiff had testified in a 30(b)(6) deposition that plaintiff considered the design in question to be subject to copyright protection rather than a trademark.  The court went on to note that "even if the court were to credit Plaintiff's efforts to explain away the corporate representative's statement, Plaintiff has provided no evidence of actual use of the mark as a trademark and no evidence that the mark would be recognized by a consumer as a source identifier.  Of course, not every case where a party loses at summary judgment

1  qualifies as exceptional.  But this case is not one where there was inadequate evidence to create a

2  triable issue but rather almost no evidence."  2017 WL 2259672, at *4.

3        Here, as in *Amusement Art*, the district court granted summary judgment on plaintiff's

4  claim. And here, as in *Amusement Art*, the plaintiff offered "no evidence that the mark would be

5  recognized by a consumer as a source identifier."  2017 WL 2259672, at *4.  Accordingly,

6  Redbubble submits that here, like in *Amusement Art*, the case "stands out" as an exceptional case

7  that warrants an award of attorneys' fees to the prevailing defendant.

8        **B.**    **<u>Redbubble's Requested Fees Are Reasonable.</u>**

9        After a party establishes the right to recover fees, the district court is tasked with

10  evaluating the reasonableness of the rates and number of hours billed.  *Intel Corp. v. Terabyte*

11  *Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

12  The analysis begins with the evidence submitted by the moving party as to "the hours worked and

13  rates claimed."  *Hensley*, 461 U.S. at 433.

14        After determining the number of hours, the court evaluates the reasonableness of the rates

15  claimed by the moving party: "The determination of a reasonable hourly rate 'involves examining

16  the prevailing market rates in the community charged for similar services by lawyers of reasonably

17  comparable skill, experience, and reputation.'"  *Dropbox, Inc. v. Thru Inc.*, No. 15-CV-01741-

18  EMC, 2017 WL 914273, at *4 (N.D. Cal., Mar. 8, 2017) (citing *Cotton v. City of Eureka*, 889

19  F.Supp.2d 1154, 1167 (N.D. Cal. 2012)).  "The 'relevant community' for the purposes of

20  determining the reasonable hourly rate is the district in which the lawsuit proceeds."  *Id.* (citing

21  *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)).  Absent a showing that attorneys billed

22  excessive rates or "performed below the level of expertise that would command those rates… the

23  court must presume those requested rates are reasonable."  *United Steelworkers of Am. v. Phelps*

24  *Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  Furthermore, the fact the fees are actually paid

25  by a sophisticated party "adds weight to the presumption of reasonableness." *Stonebrae*, 2011 WL

26  1334444, at *6.

27        Here, although LTTB has agreed that Redbubble's attorneys' hourly rates are reasonable,

28  LTTB disputes that the amounts incurred at those rates are reasonable.  [Dkt. No. 67 (Masur

Decl.), Exh. C.]  LTTB's counsel asserts:  "The hours are much more than double the 201 hours spent representing LTTB, and the fees are more than double despite my hourly rate being higher than Ken [Wilson]'s.  It is difficult to see how the case was managed efficiently with this amount of time expended."  [*Id.*]  As a *prima facie* matter, Redbubble respectfully submits that, given LTTB's repeated assertion as recently as summary judgment that the Court should award it up to $6,000,000 in statutory damages [Dkt. No. 42 at 27, Dkt. No. 49 at 11], it is incongruous at best for LTTB to contend that it was somehow unreasonable for Redbubble to invest less than 4% of that potential exposure in its defense.  LTTB ignores, moreover, that its own principal testified at summary judgment that she alone had spent more than 515 hours – more than all Redbubble's outside counsel, combined – pursuing this case, apparently performing, at least in part, tasks that would ordinarily have been performed by counsel.  [*See* Dkt. No. 43 (Gorski Decl.), ¶ 36.]  LTTB explicitly argued that its actual damages should account for such time.  [*See* Dkt. No. 42 (LTTB Opp. and Cross-Mot.) at 12-13 (citing Dkt. No. 43 (Gorski Decl.), ¶ 36.]  Thus, LTTB spent over 700 hours litigating this case, despite being inherently familiar with LTTB's own purported trademark rights and prosecution history, and its presumptive ability to reuse discovery and other materials from prior litigations, including the *Gymboree* case.  LTTB's complaint that it was somehow unreasonable for Redbubble to invest 250 fewer hours rings hollow.

There can be no realistic argument from LTTB that Redbubble's attorneys overstaffed the case or were somehow inefficient.  Indeed, Redbubble staffed the case leanly with only two lawyers performing virtually all of the work.  Other district courts have granted fee motions as reasonable in trademark infringement cases that were more heavily staffed than this matter.  *See Sazerac, supra.*[8]  There is simply no basis on which to reduce the hours actually incurred in the defense of the matter.  *See United Steelworkers,* 896 F.2d at 407 ("We emphasize that hours actually expended in the litigation are not to be disallowed without a supporting rationale").

---

[8] Indeed, while the *Sazerac* case involved additional issues, including trade dress infringement, it bears noting that the defendant in that case spent $985,949.26 defending the case through summary judgment, and $518,817.91 on the subsequent bench trial.  2017 WL 6059271, at *1. Through summary judgment, Redbubble spent roughly a quarter of the amount spent by the *Sazerac* defendant.

1

## IV.      <u>CONCLUSION</u>

2         For the foregoing reasons, Redbubble respectfully requests that the Court grant this motion

3   and award the full amount of fees requested and supported by the documents submitted with this

4   motion, in the amount of $237,797.

5

6   Dated:  August 16, 2019                    COASTSIDE LEGAL
                                               KENNETH B. WILSON
7
                                               ZUBER LAWLER & DEL DUCA LLP
8                                              JOSHUA M. MASUR

9                                              By:   _*/s/ Kenneth B. Wilson*_____
10                                                  KENNETH B. WILSON

11                                             Attorneys for Defendant
                                               REDBUBBLE INC.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28